**KASEROFF v. PETERSEN et al.**

No. 10152.

Circuit Court of Appeals, Ninth Circuit.

May 21, 1943.

Rehearing Denied June 24, 1943.

George H. Hauerken, of San Francisco, Cal., for appellant.

S. Hasket Derby, Joseph C. Sharp, James A. Quinby, Lloyd M. Tweedt, and Derby, Sharp, Quinby & Tweedt, all of San Francisco, Cal., for appellees.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellees, owners of the steam vessel Martindale, filed a libel against appellant and the steam vessel Yankee Clipper, of which appellant was owner and master, for damages suffered by the Martindale in a collision with the Yankee Clipper. Appellant answered, trial was had, findings of fact and conclusions of law were made and filed, and a decree was entered in appellees' favor for $3,532.41, with interest and costs. From that decree this appeal is prosecuted.

The Martindale and the Yankee Clipper were American vessels engaged in sardine fishing in the Pacific Ocean off the coast of California. Each was of more than 40 tons gross tonnage. Both were purse seiners. The collision occurred between 1:30 A. M. and 2:45 A. M. on November 9, 1940, at a point about six miles south of the San Francisco lightship. The night was moonless, but clear, and the sea was calm. Shortly before the collision, the Martindale had located and circled a school of fish.[1] She had completed the circle and was preparing to make a set[2] when struck on her port side by the bow of the Yankee Clipper, causing damage to the Martindale the repair of which cost $3,532.41. The Yankee Clipper was not damaged.

The court below found: "The Martindale observed all precautions required by law and custom of a vessel in her situation, and committed no fault contributing to the collision." The finding is clearly erroneous. The evidence shows that both vessels were at fault. Both violated article 2(a) of the International Rules for Navigation at Sea, 33 U.S.C.A. § 72(a), which provides:

---

[1] That is to say, she had gone around the school in order to estimate its size and to determine whether it was worth taking or not.

[2] That is to say, she was preparing to set her net around the school of fish. This would have required a second circling of the school. The collision occurred just as the second circling was about to commence.

"Art. 2. A steam vessel when under way[3] shall carry—(a) On or in front of the foremast, * * * at a height above the hull of not less than twenty feet, * * * a bright white light,[4] so constructed as to show an unbroken light over an arc of the horizon of twenty points of the compass, so fixed as to throw the light ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side, and of such a character as to be visible at a distance of at least five miles."

■ Neither the Martindale nor the Yankee Clipper carried a white masthead light. There is said to be a custom among steam fishing vessels operating off the California coast not to carry such a light—in other words, a custom of violating article 2(a) of the International Rules. The custom, if it exists, does not excuse the violation or relieve anyone from the consequences thereof. Lehigh Coal & Navigation Co. v. Compagnie Generale Transatlantique, 2 Cir., 12 F.2d 337, 338; The Georgia, 2 Cir., 18 F.2d 743, 744; The Priscilla, 1 Cir., 55 F.2d 32, 36.

■ The court below found: "By a custom well established on Pacific Coast fishing grounds, the vessel first locating and circling a school of fish has prior right to such fish and, when commencing a set, may indicate her encumbered condition and privileged status by displaying a red light[5] at her masthead." The court further found that the Martindale, after locating and circling the school of fish first mentioned, displayed her red (setting) light, as required by custom. That light, obviously, was not the equivalent of, or a permissible substitute for, the white masthead light required by article 2(a).

■ Both vessels being at fault, each had the burden of proving that her fault—namely, her violation of article 2(a)—could not have been one of the causes of the collision. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726. The burden was not sustained. The evidence does not show that either vessel's fault could not have been one of the causes of the collision. Instead, the evidence shows that each

vessel's fault not only could have been, but probably was, one of the causes. We conclude that the damages should be equally divided. The Ariadne, 13 Wall. 475, 479, 20 L.Ed. 542; The North Star, 106 U.S. 17, 20, 1 S.Ct. 41, 27 L.Ed. 91; The Manitoba, 122 U.S. 97, 111, 7 S.Ct. 1158, 30 L.Ed. 1095; The Chattahoochee, 173 U.S. 540, 549-555, 19 S.Ct. 491, 43 L.Ed. 801; The Eugene F. Moran, 212 U.S. 466, 473-477, 29 S.Ct. 339, 53 L.Ed. 600.

The decree is modified by reducing the amount thereof from $3,532.41 to $1,766.20 and, as thus modified, is affirmed.

---

[3] A vessel is "under way," within the meaning of these rules, when she is not at anchor, or made fast to the shore, or aground. 33 U.S.C.A. § 62. The Martindale and the Yankee Clipper were "under way" at all pertinent times.

[4] Commonly called a masthead light.

[5] Commonly called a setting light.