STATES STEAMSHIP COMPANY,
a corporation, Appellant,

v.

PERMANENTE STEAMSHIP CORPO-
RATION, a corporation, Appellee.

No. 14736.

United States Court of Appeals
Ninth Circuit.

March 6, 1956.

Lillick, Geary, Olson, Adams & Charles, Gilbert C. Wheat, Willard G.

Gilson, San Francisco, Cal., for appellant.

Thelen, Marrin, Johnson & Bridges, Gordon Johnson, A. Barlow Ferguson; Derby, Sharp, Quinby & Tweedt, James A. Quinby, San Francisco, Cal., for appellee.

Before HEALY and FEE, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

This appeal is from an interlocutory decree in admiralty, 28 U.S.C. § 1292, adjudging appellant's SS Colorado the sole fault of a collision between the Colorado and appellee's SS Permanente Silverbow.

The evidence is analyzed and the facts set forth in clear detail in the opinion written by the learned district judge. Permanente S. S. Corp. v. The Colorado, D.C.N.D.Cal.1955, 129 F.Supp. 65.

It will suffice here to repeat appellee's version of the incident:

"Shortly before nine o'clock on the evening of January 1st, 1954, the Permanente Silverbow was proceeding in a southerly direction in the Pacific Ocean off the coast of California in the vicinity of Fort Bragg. The weather was clear, the sea calm, the wind negligible, and visibility practically unlimited. The vessel, bound from Portland, Oregon, to San Francisco, without cargo, was proceeding at her normal cruising speed on a compass course of 160 degrees true.

"Shortly before nine o'clock, the mate of the Permanente Silverbow sighted the white masthead light of a north bound vessel, which later proved to be the Colorado, directly ahead at an estimated distance of five miles. The vessels proceeded directly toward each other until the mate of the Permanente Silverbow could see both colored sidelights of the Colorado. Observing the masthead and range light of the Colorado to 'open' or draw apart, in such manner as to indicate a change of that vessel's course to her own right, the mate of the Permanente Silverbow also gave way slightly to the right to a compass course of 175 degrees true, after which each vessel had a relative bearing off the port bow of the other.

"Instead of maintaining its course and thus effecting a routine port to port meeting, in which each vessel shows its left side to the other, the Colorado then altered its course to its own left and crossed the bow of the Permanente Silverbow about one mile ahead of that vessel. As soon as the mate of the Permanente Silverbow saw the green, or right-hand, side light of the Colorado cross his bow from left to right, and appear off his starboard bow, he gave way slightly to the left and returned to a compass heading of 160 degrees true, after which the two vessels were situated to pass safely starboard to starboard, each presenting its right side to the other.

"Instead of carrying out and completing this simple maneuver the Colorado, when almost abreast of the Permanente Silverbow, turned sharply to its own right, and its bow struck the starboard or right side of the Permanente Silverbow at approximately a right angle at a point about ninety feet from the stern. A few seconds before the collision, which occurred about 9:05 p. m., the wheel of the Permanente Silverbow was ordered hard left in an effort to avoid the Colorado, but the maneuver had little or no chance to take effect, swinging the vessel a mere five degrees to the left to a compass heading of 155 degrees true at the time of impact." Id., 129 F.Supp. at page 66.

Appellee thereupon libeled the Colorado alleging collision damages of $475,-000; and appellant in turn libeled the Permanente Silverbow alleging collision damages of $275,000. Cross-libels were

filed in each case and, pursuant to stipulation of the parties, the two causes were consolidated and tried together.

■ The District Court, upon hearing the evidence, accepted appellee's version of events preceding the collision. The District Court's findings are in turn accepted in this Court unless clearly erroneous, since "no greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure." McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20.

It is beyond dispute that when the vessels first observed each other, they were approaching end on or nearly so, in the situation of meeting vessels. And International Rule 18 provides in part that: "When two power-driven vessels are meeting end on, or nearly end on, so as to involve risk of collision, each shall alter her course to starboard, so that each may pass on the port side of the other." 33 U.S.C.A. § 146b(a).

In altering course to starboard preparatory to a port-to-port passing, each vessel at the outset obeyed the rule just quoted; but in later altering course to port when the ships were about one mile apart, the Colorado inexcusably violated the mandate of International Rule 18.

The Colorado then placed herself further at fault by disobeying also International Rule 28(a), which directs that: "When vessels are in sight of one another, a power-driven vessel under way, in taking any course authorized or required * * *, shall indicate that course by the following signals on her whistle, namely:—One short blast to mean 'I am altering my course to starboard.' Two short blasts to mean 'I am altering my course to port.' Three short blasts to mean 'My engines are going astern.'" 33 U.S.C.A. § 147(a).

As stated in the District Court's opinion: "Both the Colorado and the Silverbow have stipulated that neither ship sounded whistles the night of the collision." Permanente S. S. Corp. v. The Colorado, supra, 129 F.Supp. at page 71. But the trial court additionally found that "neither vessel's failure to sound signals was or could have been a cause of the collision."

The opinion explains: "It was [the Colorado's] inattentiveness, and inappropriate maneuvering that caused the two vessels to assume the positions that they did, and under the circumstances, the blowing of whistles would not have, in the court's view, prevented the ensuing collision." Ibid.

The gist of appellant's argument here is that the findings of the District Court as to fault and causation are clearly erroneous, and require reversal of the interlocutory decree adjudging sole fault in the Colorado.

■ It is settled that a finding is clearly erroneous "when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" McAllister v. United States, supra, 348 U.S. at page 20, 75 S.Ct. at page 8, 99 L.Ed. 20; United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

Appellant concedes that there was no causal connection between the collision and failure of the Permanente Silverbow to sound one short blast to mean "'I am altering my course to starboard'", International Rule 28, 33 U.S.C.A. § 147(a), when, upon sighting the Colorado directly ahead at an estimated distance of five miles, the Permanente Silverbow altered her course 15° to starboard in compliance with International Rule 18. 33 U.S.C.A. § 146b(a).

■ And appellant does not seriously urge as a proximate cause the failure of the Permanente Silverbow to signal the hard turn to port which she took "a few seconds before the collision." This was but an incident to the *in extremis* navigation imposed upon the Permanente Silverbow by the unsignaled sharp turn

to starboard just made by the Colorado. Cf. The Knoxville City, 9 Cir., 1940, 112 F.2d 223, 229.

What appellant contends is that when, after allegedly observing the Colorado alter course to port "about one mile ahead", the Permanente Silverbow also altered course to port, this maneuver, coupled with failure of the Permanente Silverbow then to sound two short blasts on her whistle as required by International Rule 28, must be held to have been one of the proximate causes of the collision.

█ In support of this contention appellant relies upon the rule of The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 136, 22 L.Ed. 148, that where "a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute."

This rule has been reiterated by the Supreme Court. Lie v. San Francisco & Portland S. S. Co., 1917, 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726; The Martello, 1894, 153 U.S. 64, 74, 14 S.Ct. 723, 38 L.Ed. 637; Belden v. Chase, 1893, 150 U.S. 674, 699, 14 S.Ct. 264, 37 L.Ed. 1218; Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 1890, 136 U.S. 408, 422, 10 S.Ct. 934, 34 L.Ed. 398. And it has been consistently followed in this circuit. Matson Nav. Co. v. Pope & Talbot, 9 Cir., 149 F.2d 295, 299, certiorari denied, 1945, 326 U.S. 737, 66 S.Ct. 46, 90 L.Ed. 439; Carr v. Hermosa Amusement Corp., 9 Cir., 137 F.2d 983, 987–988, certiorari denied, 1944, 321 U. S. 764, 64 S.Ct. 520, 88 L.Ed. 1060; Kaseroff v. Petersen, 9 Cir., 1943, 136 F.2d 184, 186; The Silver Palm, 9 Cir., 94 F.2d 754, 759, certiorari denied United States v. Silver Line, 1938, 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1539; The Beaver, 9 Cir., 1915, 219 F. 134, 138, affirmed sub nom.; Lie v. San Francisco & Portland S. S. Co., supra, 243 U.S. 291, 37 S. Ct. 270, 61 L.Ed. 726; cf. Crowley Launch & Tugboat Co. v. Wilmington Transp. Co., 9 Cir., 1941, 117 F.2d 651.

█ As observed in Oriental Trading & Transport Co. v. Gulf Oil Corp., 2 Cir., 173 F.2d 108, certiorari denied Gulf Oil Corp. v. M/V The John A. Brown, 1949, 337 U.S. 919, 69 S.Ct. 1162, 93 L. Ed. 1728: "The purpose of * * * all rules touching signals * * * is to advise the ship to which the signal is addressed that she can no longer rely upon the signalling ship's being at those future positions to which her observed course would otherwise bring her, but that she will be at those which the signal forecasts. Pending any delay in giving the signal the addressed ship is being positively misled, for she will properly assume that the ship, which at length does signal, has meanwhile continued on her course." 173 F.2d at page 109.

█ The rule of The Pennsylvania lays upon the Permanente Silverbow the "severest" burden of proof to establish that her failure to signal a turn to port made in an end-to-end meeting situation "could not have been" one of the proximate causes of the collision. The Silver Palm, supra, 94 F.2d at page 759; Matson Nav. Co. v. Pope & Talbot, supra, 149 F.2d at page 299; Carr v. Hermosa Amusement Corp., supra, 137 F.2d at pages 987–988; Kaseroff v. Petersen, supra, 136 F.2d at page 184.

We agree of course that the Supreme Court did not intend in The Pennsylvania "to establish as a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision no matter how speculative, improbable or remote." Seaboard Tug & Barge v. Rederi AB/DISA, 1 Cir., 1954, 213 F.2d 772,

775; accord Compania De Maderas, etc. v. The Queenston Heights, 5 Cir., 1955, 220 F.2d 120, 122.

■ The ultimate standard of reasonableness is a constant in our common-law system, and through resort to that standard rules of law expressed in the most absolute terms are made subject to exceptions dictated by reason. Funk v. United States, 1933, 290 U.S. 371, 383–385, 54 S.Ct. 212, 78 L.Ed. 369; The Mabel, 2 Cir., 1929, 35 F.2d 731, 732; Pound, The Spirit of the Common Law, 1921, 182–183.

■ Hence we read the phrase "could not have been" in The Pennsylvania to mean that where a ship at the time of a collision is in violation of a statutory rule intended to prevent collisions, the burden of proof rests upon her to establish that the violation could not reasonably be held to have been a proximate cause of the collision.

■ Which is to say in effect, as was said in Oriental Trading & Transport Co. v. Gulf Oil Corp., supra, that in order to escape half damages the ship failing to signal "must prove beyond reasonable doubt that the collision would have occurred, even though she had blown at the moment when she changed her helm." 173 F.2d at page 109; and see: The Aakre, 2 Cir., 122 F.2d 469, certiorari denied Waterman v. The Aakre, 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552.

■ Nor is appellee's burden here met by assuming, as does appellee, that when the ships were approximately one mile apart the Colorado ex parte converted the end-to-end meeting situation into a crossing situation, in which the Permanente Silverbow was the privileged and the Colorado the burdened vessel. Cf: The Albert Dumois, 1900, 177 U.S. 240, 254, 20 S.Ct. 595, 44 L.Ed. 751; The Orduna, 1 App.Cas. 250 (1921); Farwell, The Rules of the Nautical Road, pp. 149–151 (2d ed. 1944); Griffin on Collision, pp. 34, 69 1949). For International Rule 19 provides that: "When two power-driven vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other." 33 U.S.C.A. § 146c. And International Rule 21 provides that: "Where * * * one of two vessels is to keep out of the way, the other shall keep her course and speed. When, from any cause, the latter vessel finds herself so close that collision cannot be avoided by the action of the giving-way vessel alone, she also shall take such action as will best aid to avert collision * * *." 33 U.S.C.A. § 146c.

If we should adopt, then, appellee's view that the Colorado's faulty navigation gave the Permanente Silverbow the right of way in a crossing situation, the admitted fact remains that appellee's vessel failed to perform her correlative obligation to keep course. The Britannia, 1894, 153 U.S. 130, 138, 14 S.Ct. 795, 38 L.Ed. 660.

Giving full credit, as did the able trial judge, to the testimony of the Permanente Silverbow's mate on watch, it is nonetheless conceded that when the ships were about five miles apart appellee's mate considered "it should have been a port to port passage" and properly altered his course 15° to starboard. Moreover, when the ships were about one mile apart and the Colorado assertedly turned left, the Permanente Silverbow's mate says he thought the situation was "getting a little unorthodox," and that "it was going to be a starboard to starboard passage." So considering and so thinking, appellee's mate then altered his course 15°, this time to port, and without signal.

The District Court found that the Permanente Silverbow "is a steel cargo vessel of the 'Victory' type, about 439 feet long, with a gross tonnage of 7606 tons"; and the Colorado is a vessel "similar in size and type." It is undisputed that at the time in question the Colorado was laden with 3200 tons of cargo, and the Permanente Silverbow was without cargo.

The District Court further found that the Colorado was proceeding northward at a speed of "about 16 knots" and the Permanente Silverbow was proceeding southward at a speed of "about 17.9 knots." So the ships were approaching each other at the rate of about 60 feet per second. In terms of land travel the rate was approximately two-thirds of a mile per minute.

Appellee suggested at the bar upon oral argument that it might be proper to characterize as an "insane" maneuver the Colorado's unsignaled hard turn to starboard shortly prior to the collision. Without diluting the Colorado's fault it may be supposed that the questioned maneuver was a frantic effort by the Colorado to return to an orthodox port-to-port passage in keeping with International Rule 18.

Whatever the true explanation, the Permanente Silverbow's own version leaves unanswered the reasonable doubt whether the Colorado's last-minute turn to starboard would ever have been made, had the Permanente Silverbow given any signal whatever of her just-completed turn to port.

Ironically, earlier on January 1, 1954, the day of the collision, the new international "Regulations for Preventing Collisions at Sea, 1948" had become effective, 65 Stat. 406 (1951) as amended by 67 Stat. 83 (1953), Presidential Proc. No. 3030, 18 F.R. 4983 (1953), 33 U.S.C.A. §§ 143 et seq., 143 note. Insofar as applicable to the navigation of power-driven vessels in meeting and crossing situations, however, the new rules are virtually the same as their predecessors. 33 U.S.C.A. §§ 103–108.

The manifest policy of the International Rules, new and old, prompts the holding that where a vessel labors under doubt as to the intended maneuvers of another, as did the Permante Silverbow here, and proceeds to change course without signal, such maneuver coupled with failure to signal may reasonably be held to have been a proximate cause of ensuing collision. See 33 U.S. C.A. § 147(b); The Adriatic, 1882, 107 U.S. 512, 2 S.Ct. 355, 27 L.Ed. 497; The Midland Victory, 2 Cir., 1949, 178 F.2d 243; Pacific-Atlantic S. S. Co. v. United States, 4 Cir., 175 F.2d 632, certiorari denied, 1949, 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532; Sawyer v. McDonald, 5 Cir., 1948, 165 F.2d 426; City of Los Angeles v. Standard Transp. Co., 9 Cir., 1929, 32 F.2d 988; The West Hartland, 9 Cir., 1924, 2 F.2d 834; The Hokendaqua, 2 Cir., 1918, 251 F. 562; cf. The Umbria, 1897, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053; National Bulk Carriers v. United States, 2 Cir., 183 F.2d 405, certiorari denied Burns S. S. Co. National Bulk Carriers, 1950, 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631; The Steel Inventor, 2 Cir., 1930, 43 F.2d 958, 961; The Lord O'Neill, 4 Cir., 1895, 66 F. 77.

In the language of Belden v. Chase, supra, 150 U.S. at page 699, 14 S.Ct. at page 272, 37 L.Ed. 1218: "Obedience to the rules is not a fault, even if a different course would have prevented the collision, and the necessity must be clear, and the emergency sudden and alarming, before the act of disobedience can be excused. Masters are bound to obey the rules, and entitled to rely on the assumption that they will be obeyed, and should not be encouraged to treat the exceptions as subjects of solicitude, rather than the rules."

Accordingly the trial court's findings that "the collision was caused solely by the * * * faults of the Colorado, and that neither vessel's failure to sound signals was or could have been a cause of the collision," must be held clearly erroneous.

To repeat the words of this Court in Kaseroff v. Petersen, supra, 136 F.2d at page 186: "Both vessels being at fault, each had the burden of proving that her fault * * * could not have been one of the causes of the collision. * * * The burden was not sustained. The evidence * * * shows that each vessel's fault not only could have been, but probably was, one of