**A. H. BULL STEAMSHIP COMPANY, owner of THE ELIZABETH, Libelant and Cross-Respondent,**

**v.**

**THE EXANTHIA and its owner, American Export Lines, Inc., Respondent and Cross-Libelant.**

**Nos. 308, 309, Dockets 23783, 23784.**

United States Court of Appeals Second Circuit.

Argued May 8, 1956.

Decided June 15, 1956.

A. V. Cherbonnier, New York City (Satterlee, Brown & Cherbonnier, New York City, and Edward R. Downing and William P. Hepburn, New York City, on the brief), for libelant and cross-respondent.

James M. Estabrook, New York City (Haight, Gardner, Poor & Havens, Kenneth Gardner, and Walter A. Darby, Jr., New York City, on the brief), for respondent and cross-libelant.

Bigham, Englar, Jones & Houston, New York City (Richard F. Shaw and Donald M. Waesche, Jr., New York City, of counsel), for intervening cargo petitioners.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CLARK, Chief Judge.

This is an appeal and cross-appeal from an interlocutory decree of the district court in admiralty finding both the steamship Elizabeth and the steamship Exanthia at fault in a collision between the two vessels occurring in Delaware Bay, February 16, 1951. The accident took place at 2:05½ a. m. on a clear night with good visibility at a point in a northwesterly direction from Miah Maull Lighthouse.

A few minutes before the collision the Exanthia, a vessel of about 6,000 gross tons, was proceeding north up the Delaware River channel at a speed of about 17½ knots through the water and about 18½ knots over the ground. She was overtaking the Sun Oil Tanker, Southern Sun, which was navigating approximately in mid-channel at a point where the channel was about 900 feet wide. The Exanthia signaled the Southern Sun with two blasts, indicating her intention of passing the latter vessel on her port side. The Southern Sun answered with two blasts. The Exanthia thereupon altered her course to port and proceeded out of the channel, passing buoy No. 19 (which marked the western limit of the channel) about 100 feet to its west.

At that time the navigators of the Exanthia could see the lights of the

Elizabeth, which was approaching down the channel from the north at a distance of about seven miles. The navigators of the Elizabeth, a vessel of about 8,000 gross tons, also first observed the Exanthia's lights when the latter vessel was in the vicinity of buoy No. 19.

Judge Walsh found that after passing the Southern Sun the Exanthia did not return as soon as practicable to the channel, but remained outside it to the westward for some undetermined time as the Elizabeth approached. After passing buoy No. 19, the green light of the Exanthia became visible to the Elizabeth, and the Exanthia continued to show only her green light to the Elizabeth at all times thereafter until shortly before the collision. Although the Exanthia made a series of small alterations of course to her right, the time and place of her re-entrance into the channel are not precisely known.

When the vessels were about 1½ to 2 miles apart the Elizabeth sounded two blasts on her whistle, and the officer on watch listened for an answer from a position outside the wheelhouse. Hearing none in about half a minute he reported to the pilot, who then blew a second two-blast signal and left the wheelhouse for the bridge to listen for an answer. Again not hearing a reply after an interval of about half a minute the pilot signaled two blasts a third time. Immediately thereafter he saw the Exanthia disclose her red side light, and he then reversed his engines to full astern and put his rudder hard left. Before turning to starboard as aforesaid the Exanthia blew a signal of one blast, but the navigators of the Elizabeth did not hear it.

The Exanthia did not hear the first two signals of two blasts sounded by the Elizabeth. The two-blast signal of the Elizabeth which the Exanthia *did* hear following her own one-blast signal was the third two-blast signal sounded by the Elizabeth; but it was not sounded in answer to the Exanthia's one-blast signal, for that signal was not heard by the Elizabeth. On hearing the final two-blast signal from the Elizabeth at 2:04 a. m., the Exanthia stopped her engines, blew a danger signal, and put her rudder hard right. The Exanthia then went full astern at the master's orders at 2:05, the collision was at 2:05½, and immediately after the collision the engines were stopped. The Exanthia struck the Elizabeth at her No. 1 hatch, causing extensive damage, but no loss of life.

Astern of the Elizabeth at a distance of about two miles and also proceeding down the channel was the tanker Dynafuel.

Judge Walsh found both the Exanthia and the Elizabeth at fault in that both continued to proceed at too high a speed under the circumstances and both delayed too long in stopping their engines. As to the Elizabeth, he found her at fault for violating Article 18 of the Inland Rules, 33 U.S.C. § 203, in that, after blowing her second two-blast signal and not receiving a reply, she kept on at full speed without either stopping her engines or blowing a danger signal of several short blasts, but blew her third two-blast signal and without waiting for a reply went hard left. And the Exanthia was at fault for failing either to maintain the course on which she had improvidently embarked outside the channel until the Elizabeth had passed or to re-enter the channel promptly upon observing the Elizabeth and at a sufficient distance ahead of the Elizabeth to avoid danger of collision.

■ The Exanthia's appeal consists primarily of an effort to have us reverse the judge's findings as to the position of the Exanthia before the collision. There was a conflict of testimony on this issue. The witnesses aboard the Elizabeth testified that the Exanthia was on the outside of the westerly side of the channel until shortly before the collision; the witnesses on the Exanthia and the Southern Sun testified that the Exanthia had returned to the channel promptly after passing the Southern Sun. It is contended that the testimony of the presumably

disinterested Southern Sun witnesses should receive decisive weight on this point. The pilot of the Exanthia, however, testified that the Elizabeth was showing a green light as the Exanthia approached her after passing buoy No. 19. At the trial the Exanthia's pilot testified that the approaching Elizabeth bore off his port bow; but on cross-examination it was brought out that at the earlier Coast Guard hearing he had testified that the Elizabeth bore off his *starboard* bow. The effect of this testimony by the Exanthia's pilot was to substantiate the Elizabeth's view that the Exanthia had remained west of the channel until dangerously close to the Elizabeth. Judge Walsh thus had additional ground for rejecting the testimony of the Southern Sun witnesses; in any event, his findings of fact establishing the fault of the Exanthia were not clearly erroneous. See McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20; Schroeder Bros., Inc., v. The Saturnia, 2 Cir., 226 F.2d 147, 149; The Paul Dana v. Socony Vacuum Oil Co., 2 Cir., 165 F.2d 78, 79.

■ The Exanthia also objects to the court's failure to give weight to the evidence of the Exanthia's course recorder which purportedly substantiated the Exanthia's version of her position and course prior to the accident. But, as the judge pointed out, there was no way of knowing exactly where the course plotted from the data furnished by the recorder began; and there was no correction for possible side drift. Hence he was justified in giving greater weight to what he felt was the more credible eyewitness testimony. Moreover, it does seem more reasonable to believe that the Exanthia remained overlong outside the channel to the west than to suppose that the Elizabeth pursued the rationally inexplicable course of going off to the easterly or port side of the channel.

The Elizabeth cross-appeals primarily on the ground that Judge Walsh erred in holding her guilty of violating Article 18 of the Inland Rules in failing to slow down or stop when she received no answer to her second two-blast signal. She argues that her first two-blast signal "was a gratuitous act of a cautious navigator," since Article 18 does not require whistle signals when vessels are meeting green light to green light or red to red. Similarly the Elizabeth contends that she had no reason to anticipate any but a "normal" green to green passage until the Exanthia suddenly disclosed a red light, which disclosure did not occur until after the Elizabeth's third signal.

■■ But Rule III of Article 18 requires that when vessels are approaching each other and one fails to understand the course or intention of the other it shall sound the danger signal. Here the navigators of the Elizabeth observed the Exanthia approaching on a course outside the channel apparently for a starboard to starboard passing that could hardly be considered normal, although perhaps proper under the circumstances. That there was, or should have been, doubt about the course or intention of the Exanthia is clear from the Elizabeth's repeated whistle signals and the efforts of her navigators to hear the Exanthia's reply. Perhaps such doubts were caused by the action of the Exanthia before the second signal and possibly before the first in turning toward the channel, although not sufficiently to disclose her red light. Under the circumstances the judge was justified in finding that the Elizabeth was guilty of statutory fault in not slowing down or stopping or sounding the danger signal after receiving no answer to her second signal. There appears, however, to be some contradiction between his Finding No. 25 that the Elizabeth "properly" put her rudder hard left and backed her engines to lessen the impact of the collision when the Exanthia swung to starboard and his conclusion of law that the Elizabeth committed statutory fault by going hard left without waiting for a reply to her two-blast signal. But we think there is no need to discuss the propriety of the Elizabeth's action *in extremis,* since there is already sufficient basis for finding of fault against her in

that she presumptuously continued at full speed and without sounding the danger signal, though uncertain of the Exanthia's intentions. See The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126; Det Forenede Dampskibs-Selskab A/S v. The Excalibur, D.C.E.D.N.Y., 112 F. Supp. 205, affirmed 2 Cir., 216 F.2d 84; Tide Water Associated Oil Co. v. The Syosset, 3 Cir., 203 F.2d 264; The Richard J. Barnes, 2 Cir., 111 F.2d 294; A. H. Bull S. S. Co. v. United States, 2 Cir., 34 F.2d 614; Compania De Navegacion Cristobal, S. A. v. The Lisa R., D.C.E.D. La., 112 F.Supp. 501, 504.

The decision to divide damages was therefore proper.

Affirmed.