UNION CARBIDE AND CARBON CORPORATION

v.

THE SS VELMA LYKES, Her Engines, Tackle, Apparel, Furniture, Etc.,

LYKES BROTHERS STEAMSHIP CO., Inc.

v.

THE Tug ANITA D, Her Engines, Tackle, Apparel, Furniture, Etc.

and

J. W. Banta, d/b/a Banta Towing Company.

Nos. 2145, 2159.

United States District Court
E. D. Louisiana,
New Orleans Division.
Sept. 17, 1957.

In No. 2145.

Lemle & Kelleher, George B. Matthews, New Orleans, La., for libellant, Union Carbide & Carbon Corp.

Terriberry, Young, Rault & Carroll, Alfred M. Farrell, Jr., Joseph M. Rault, Jr., New Orleans, La., Rufus C. Harris, Jr., New Orleans, La., for respondent, Claimant and Petitioner in Impleader, Velma Lykes.

In No. 2159.

Terriberry, Young, Rault & Carroll, Alfred M. Farrell, Jr., Joseph M. Rault, Jr., New Orleans, La., Rufus C. Harris, Jr., New Orleans, La., for libellant Adams & Reese, George C. Ehmig, New Orleans, La., for J. W. Banta, respondent, and Claimant of Tug Anita D.

CHRISTENBERRY, Chief Judge.

On July 21, 1951, libellant's barge CC-204, the second of a two barge tow being pushed by the Tug Anita D, was collided with by the SS Velma Lykes in the Houston Ship Channel, causing extensive damage to the barge and loss of cargo, as well as damage to the SS Velma Lykes. As a result thereof, libellant brought this action against the SS Velma Lykes. Lykes Bros. Steamship Co. Inc. claimed that vessel and impleaded J. W. Banta Towing Company and the Tug Anita D. In addition, Lykes Bros. Steamship Co. Inc. brought an action against the J. W. Banta Towing Company and the Tug Anita D for damages sustained by the SS Velma Lykes. The owner of the Anita D answered denying liability and pleaded the benefit of the statutes relative to limitation of liability. These two actions were consolidated and it was agreed prior to trial that the issue of limitation of liability be reserved pending a determination as to liability.

The matters have been tried, and the Court, having considered the pleadings, the evidence and the memoranda of proctors, makes the following findings of fact and conclusions of law:

## Findings of Fact

### I

At all times material hereto, Union Carbide & Carbon Corporation was and now is a corporation organized under the laws of New York and was the owner of the barge CC–204, a non-self-propelled, unmanned, steel tank barge designed for the carriage of liquid cargoes in bulk, and of the cargo of Ethanol laden in the said barge.

### II

At all times material hereto, Lykes Bros. Steamship Co. Inc. was and now is a corporation organized under the laws of Louisiana and was the owner of the SS Velma Lykes, a large ocean-going steamship measuring approximately 435 feet in length and 63 feet in breadth.

### III

At all times material hereto, J. W. Banta was and now is a person of the age of majority and a resident of the Parish of Iberville, State of Louisiana, doing business under the trade name of J. W. Banta Towing Company, and was the owner of the Tug Anita D. a diesel tug measuring approximately 79 feet in length and 21 feet in breadth.

### IV

The collision in question occurred in that portion of the Houston Ship Channel which transits Galveston Bay. From seaward a dredged channel enters the bay, and, on reaching the Old Quarantine Station, makes a vee, the left hand fork running to Galveston. Continuing on and one mile distant by the right-hand fork, there is another vee. The left-hand fork here is the Texas City Channel and the right-hand fork the Houston Ship Channel. The collision occurred in the Houston Ship Channel approximately 1.3 nautical miles northwest of the intersection of the Houston and Texas City Channels and in the immediate vicinity of Nun Buoy 6.

### V

On the morning of the collision, visibility was excellent and there was no wind to affect navigation. The Velma Lykes took on a pilot at the Sea Buoy at 8:35 a. m., and then proceeded into the bay bound for Houston at a speed of about 14 knots including a favoring tide. The Tug Anita D, pushing two loaded oil barges at a speed of some 4 to 5 miles per hour, was outbound in the Texas City Channel. When near Buoy 7, the tug and tow turned to port out of the channel and proceeded in the open bay intending to run across the Houston Ship Channel near Buoys 5 and 6 of that channel. The Master of the Anita D saw the Velma Lykes to the eastward in the channel about one and a half mile distant and before the Velma Lykes entered either the Texas City or Houston channel. He contends that he did not know into which channel the Velma Lykes would proceed, however, the evidence is that since the Texas City disaster (in 1947) no Lykes vessels have called at Texas City.

### VI

The Velma Lykes made her turn to shape up and run the Houston Ship Channel and sighted the Anita D and tow at a distance of about one and a half miles bearing on the Velma Lykes' port bow in a crossing situation. The tug and tow were then in the open waters between the Texas City Channel and the buoyed Houston Ship Channel. The pilot of the Velma Lykes sounded a one blast whistle signifying his intention to hold course and speed.

### VII

There was no reply by the Anita D. The pilot of the Velma Lykes repeated the one blast signal and then alerted the Anita D with four blasts for danger. At the same time the Velma Lykes' engine was reduced to half and then slow speed. These two bells were logged in the engine room at 9:17 a. m.

### VIII

As the Anita D approached the western edge of the channel on the steamship's port side, she blew a danger signal, kept her helm amidship and rang for full astern. At that time it would have taken 1,200 to 1,300 feet to bring the

tow to a dead stop. The tow continued into the channel and the Velma Lykes, over 1,000 feet distant, was put on hard rudder, her engine full astern with a "jingle" at 9:18 a. m., both anchors ordered let go, and the danger signal repeated, followed by three blasts indicating engines full astern.

## IX

The tow continued into the channel, crossed its 500 feet width, and beyond the easterly edge. The lead barge got across the bow of the Velma Lykes and went clear. But before the Velma Lykes' headway had quite been run off, her stem collided with the second barge and grounded in the mud out of the channel. The time of the collision was noted in the Velma Lykes' engine log at 9:19½ a. m.

## X

As a result of the collision, the barge CC–204 and the Velma Lykes were damaged and there was loss of cargo from the barge.

### Conclusions of Law

#### I

The subject-matter of this litigation, a marine collision, is within the admiralty jurisdiction of the Court. 28 U.S.C. § 1333.

#### II

When the Anita D turned to port out of the Texas City Channel and proceeded across the open bay towards the Houston Ship Channel and virtually perpendicular to it, she immediately became a burdened vessel in respect to any inbound traffic approaching on the tug's starboard side and was required to stand clear in the crossing situation. When the Anita D saw the Velma Lykes about one and a half mile distant in the channel, the tug knew that the steamship was on a course which might take her up to the Houston Ship Channel. This was at least five minutes before collision. Once the Velma Lykes entered the channel the vessels were in a crossing situation. The Anita D was the burdened or "giving way" vessel, and the Velma Lykes was the privileged or "holding on" vessel. Pilot Rules for Inland Waters, Article 19, 33 U.S.C.A. § 204; The Boston Socony, 2 Cir., 1933, 63 F.2d 246.

#### III

In this situation the Anita D heard the Velma Lykes sound one blast signifying her intention to hold course and speed as she was required to do. The Anita D was under the duty of standing clear of the Velma Lykes and avoid crossing ahead. This she could have done by directing her course to starboard to permit the privileged vessel to come up the channel unembarrassed and then go under the Velma Lykes' stern when she had passed. Pilot Rules for Inland Waters, Articles 22 and 23, 33 U.S.C.A. §§ 207 and 208.

#### IV

The Anita D was in violation of the Rules by failing to alter her course to starboard, or to stop the headway of her tow in time to avoid crossing ahead of the other vessel. Instead her tow entered the westerly edge of the Houston Ship Channel, crossed its width, and brought on collision with the second barge at a point outside of the east boundary of the channel where the Velma Lykes had swung under reversed engines and hard right rudder. The Anita D's failure to comply with the Rules compels her to show that this violation not only did not but could not have caused the collision. The Pennsylvania, 1874, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148. This burden the Anita D has not successfully discharged.

#### V

The Velma Lykes was guilty of fault which caused or contributed to the collision. When she heard no answer to her first passing signal, she should have been in doubt then of the course and intention of the Anita D flotilla, and the Velma Lykes was then guilty of statutory fault in not slowing down or stopping until the course and intention of the Anita D had been ascertained. A. H. Bull S. S. Co. v. The Exanthia (The Elizabeth-The Exanthia) 2 Cir., 1956,

234 F.2d 650, 1956 A.M.C. 1240. The longer the Velma Lykes postponed slowing down or stopping or taking evasive action while she blew two passing signals without hearing any answer and three sets of danger signals, the greater her fault.

### VI

 The Velma Lykes was also at fault because she persistently failed to reduce speed from full ahead or to take any other evasive action, notwithstanding the fact that it was or should have been apparent to her that the Anita D either could not or was not going to stop before proceeding across the Houston Ship Channel. Those charged with the navigation of the Velma Lykes obviously placed unwarranted reliance on its privilege to proceed ahead and require the burdened vessel, the Anita D, to avoid a collision without assistance or cooperation from the Velma Lykes. Crawford v. Indian Towing Co., 5 Cir. 1957, 240 F.2d 308.

### VII

Accordingly, the collision occurred as a result of the mutual fault of the Tug Anita D and the SS Velma Lykes. A decree dividing damages has been entered.