N. C. HADJIPATERAS and A. C. Hadji-
pateras, Appellants and Cross-
Appellees,

v.

Vassilios PAPADOPOULOS, Appellee
and Cross-Appellant.

No. 7526.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 21, 1957.

Decided Dec. 12, 1957.

John W. Winston, Norfolk, Va. (Sea-
well, Johnston, McCoy & Winston, Nor-
folk, Va., on brief), for appellants and
cross-appellees.

Jacob L. Morewitz, Newport News,
Va. (B. M. Morewitz, S. R. Morewitz
and D. E. Morewitz, Newport News, Va.,
on brief), for appellee and cross-
appellant.

Before PARKER, Chief Judge,
SOBELOFF, Circuit Judge, and R.
DORSEY WATKINS, District Judge.

R. DORSEY WATKINS, District
Judge.

In a libel filed February 13, 1953,
libellant claimed damages of "at least"
$82,939.64 for hernia and illness result-
ing from respondents' negligence, the
unseaworthiness of their vessel, and the
failure to provide prompt and sufficient
medical care; for maintenance and
cure; for failure to pay the full balance
of earned wages; for penalty under
Title 46 United States Code Annotated
§§ 596, 597, for withholding earned
wages; for false imprisonment; and
for blacklisting libellant and listing him
as a deserter.

The trial judge found as facts that
when libellant was signed on he was
given an illegal advance of $50 on future
earnings, in violation of Title 46 United

States Code Annotated § 599; that during the course of his employment as a greaser, libellant became ill; that the libellant was ordered detained aboard respondents' vessel by the United States Immigration authorities; that on August 12, 1952, the master sent libellant under guard to a doctor in Portland, Oregon, who found no evidence of sickness, and libellant was returned to the ship; that on August 15, 1952, libellant left the vessel and sought and obtained admittance to the Physicians' and Surgeons' Hospital, Portland, Oregon, where he remained until August 19, 1952, undergoing treatment;[1] that the ship's log contained an entry on August 18, 1952 by the master that upon receiving information that libellant was in the hospital, he went there "to find out what actually happened * * *"; that the hospital doctor informed him that libellant "is in good health and will probably leave the hospital tomorrow * * *"; and that on the same day the master reported that he had "discharged" libellant "on account of illness and admitted to the hospital in Portland for observation * * *."

The court further found that on August 18, 1952, the vessel left the United States, at which time libellant was hospitalized ashore; that during libellant's employment the vessel made four voyages of more than ten days' duration and libellant was entitled to wages for four days worked by him when he should have been off duty; that on his discharge, libellant became entitled to the immediate payment of $124.70 balance of earned wages then due him; that none of this was paid him until August 31, 1952, when he received $51.88; on August 19, 1955, libellant received the $50.00 illegally advanced on future earnings;[2] that after libellant was left in the hospital at Portland, Oregon, he was taken into custody by the United States Immigration Service, placed in jail, then taken to Ellis Island and deported to Greece, as a result of which he was required to institute proceedings to reestablish his right to enter the United States as a seaman, which permission was received January 19, 1954; and that when libellant reached Greece, he entered a hospital for further treatment of the ailment from which he was complaining at Portland, Oregon, was discharged from this hospital on November 28, 1952, and was fit for duty December 18, 1952.

The district court concluded as a matter of law that the discharge of libellant in Portland, Oregon, was without sufficient cause, and libellant thereupon became entitled to payment of the balance of earned wages within a reasonable time.

As to damages, the court concluded:

"2. Libellant is entitled to receive wages during the period of his illness in the sum of $459.20, to four months' additional wages as severance pay in lieu of hospital expenses in the sum of $459.20, to pay for four days off duty in the amount of $15.28, for two days' waiting time in the amount of $7.54, and to additional special damages, including his expenses in reestablishing his right to enter the United States as a seaman in the amount

1. Libellant's Exhibit No. 3, a hospital transcript from the Medical Records Librarian of Physicians' and Surgeons' Hospital, Portland, Oregon, sent to libellant's proctor, in part states:
"Impression: Chronic prostatitis.
"Doctor's note: Patient greatly overexaggerating symptoms. Does not want to return to ship.
"Progress note: 8-18-52—Patient treated with prostatic massage and antibiotics as well as sitz baths. To be discharged to Ship Captain."

2. The libel contains no claim with respect to any illegal advance. In the course of discovery proceedings the $50.00 advance was disclosed, and that amount was paid into court, and promptly withdrawn by check payable to libellant's proctors. The court's order awarded libellant all taxable costs to date, and a fee of $20 to proctor for libellant, reserving judgment "as to the claim of Libellant for liquidated damages * * *."

of $1,000.00, making a total amount to which the libellant is entitled $1,941.22."

Respondent appealed from each and every element of damages allowed by the district court, and as to the allowance for wages for four months during disability, contended that even if allowable, a lower monthly rate was applicable. Libellant cross-appealed "from each and every ruling adverse to him."

With the record on appeal were transmitted thirteen respondents' exhibits and fifteen libellant's exhibits, one of which is marked for identification only; two are letters in the Greek language on the letterhead of the Agios Sostes Hospital, as to each of which only a few words of purported "free" English translation are given; and one exhibit, respondents' answer to interrogatories, has the clerk's notation in his certificate of exhibits "see transcript of record for portions". However, no transcript of the hearing before the district court is included in the record on appeal. The district court clerk's unusually full docket entries serve only to accentuate the difficulty of determining what transpired at the trial, since they do not cover all the exhibits transmitted, and contain statements such as "Log book (Ex. 1) introduced into evidence only as to relevancy. (Libellant's Ex. 4[3] and 10[4] admitted subject to future ruling. Libellant's Ex. 11[5] introduced for purpose of identification only)."

Were we at liberty to assume that all exhibits except Libellant's No. 11 for identification had been admitted into evidence, there might be a question as to whether or not the illness for which libellant entered the Greek Hospital was the same as the condition found in Portland, Oregon; as to the time and rate to be used to compute severance pay;[6] as to the allowance for four days off duty; and as to whether as much as $1,000 should have been allowed as special damages. However, even assuming such exhibits to have been admitted, there is support for the allowances made by the district judge, and we would not be inclined to set aside his findings and conclusions or to disturb the judgment entered thereon.

In the confused and incomplete state of this record on appeal, we are certainly not prepared to set aside the findings of the district judge as "clearly erroneous". See McAllister v. United States, 1954, 348 U.S. 19, 20–21, 75 S.Ct. 6, 99 L.Ed. 20.

The judgment accordingly is

Affirmed.

---

3. The "free translation" of Libellant's Exhibit No. 4 reads:
   "This is to certify that Vasslios (sic) Papadopoulos, patient no.      , entered this hospital No. 17, 1952 and was treated by Dr. Dexboubokkilis. He was discharged today as cured.
   "Dated Nov. 27, 1952."

4. Libellant's Ex. No. 10 is a letter dated August 22, 1952, from General Steamship Corporation, Ltd. agents for respondents, relating to two other members of libellant's crew, who were also detainees.

5. Libellant's Ex No. 11, for identification, is a self-serving letter from libellant's proctor to a New York attorney.

6. The record makes it doubtful whether matters such as severance pay and wages during hospitalization are covered by Articles 337–367 of the Greek Commercial Law or by the Greek Collective Agreement of 1951 between the Union of Greek Shipowners, Union of Mediterranean Shipowners, Panhellenic Shipping Federation and Panhellenic Union of Master Mariners.