**PATAPSCO SCRAP CORPORATION,**
Appellant,

v.

**MARYLAND SHIPBUILDING & DRY-DOCK COMPANY, Appellee.**

No. 7876.

United States Court of Appeals
Fourth Circuit.

Argued June 9, 1959.

Decided June 16, 1959.

---

David R. Owen, Baltimore, Md. (James D. Peacock, and Semmes, Bowen & Semmes, Washington, D. C., on brief), for appellant.

George E. Beechwood, Philadelphia, Pa. (William B. Rafferty, Baltimore, Md., Beechwood & Lovitt, Philadelphia, Pa., and Miles & Stockbridge, Baltimore, Md., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

SOBELOFF, Chief Judge.

During Hurricane Hazel a ship broke away from her moorings in Baltimore Harbor, and ran into and damaged a nearby pier. The Maryland Shipbuilding and Drydock Company, owner of the pier, filed a libel in admiralty against Patapsco Scrap Corporation, owner of the ship, the S.S. Isaac T. Mann, which was then in the process of being scrapped. The District Court gave judgment in favor of the pier owner in the agreed amount of the damage, $86,000.

At the trial the libellant rested its case after offering in evidence certain pleadings and answers to interrogatories to show the happening of the collision. Concededly, this constituted a *prima facie* case and the defendant, accepting the burden of going forward, offered voluminous testimony to explain the occurrence. The libellant then offered expert testimony in rebuttal. The evidence was that the ship was torn loose from its moorings at 4:10 p. m. on October 15, 1954. Two of the ship's thirteen mooring lines pulled the bollards, to which they were attached, out of the pier. The ship then drifted or was driven by the wind against the libellant's pier.

The defendant's effort was to show that it took every reasonable precaution and could not have prevented the damage. While conceding that it was under a duty to go forward with the testimony, the defendant insisted below and here that the ultimate burden of proving negligence was upon the libellant, and that the burden of establishing the contrary did not shift to the defendant. The libellant's contention, on the other hand, was that the shipowner must be held responsible unless it can show affirmatively that the collision between ship and pier resulted from an act of God or an inevitable accident which it could not have prevented.

Patapsco presented much evidence as to the measures it took to make the ship secure when the Weather Bureau announced the approach of the hurricane and predicted gusts up to 70 miles per hour. Libellant's witnesses criticized the appropriateness and adequacy of these precautions in several respects, such as that the defendant used an excessive number of lines to moor the ship, thereby making it more difficult to equalize the strain upon the lines; that all but one of the lines used were of wire instead of manila rope which, because of the comparative inelasticity of the wire, also rendered equalization of the strain more difficult; that some of the wires came from the defendant's scrap warehouse, and adequate inspection was not made to ascertain the sufficiency of the wires; and that the defendant failed to produce at the trial the wires and ropes with which the ship had been moored. Some of these criticisms, though not all, the Court definitely rejected. While acknowledging the impressiveness of the defendant's witnesses, it pointed out that the ship had broken away despite the defendant's own testimony that if all of the precautions which it claimed to have taken had in fact been taken the lines would have held against the predicted winds and gusts up to a velocity of approximately 70 miles per hour. From this the Court declared that it was reasonable to infer that some of the claimed

precautions were not taken, and concluded that the defendant had not properly moored the ship.

Instead, the defendant invites us on appeal, as it invited the District Court, to attribute the failure of the mooring to a substantially higher wind velocity than that anticipated. There is, understandably, no evidence of the precise wind velocity at the time and place that the ship broke away. In these circumstances the defendant introduced weather readings from the nearest available points. It was shown in evidence that at Friendship Airport, seven miles distant, and at the Chesapeake Bay Bridge, 21 miles southeast of the harbor, the velocity of the gusts of wind had not reached 70 miles per hour at 4:10 p. m., but at 5:38 p. m. the velocity of the gusts at the Chesapeake Bay Bridge rose to 85 miles per hour. It appears also that other ships moored at piers adjacent to the one where the S.S. Isaac T. Mann was tied did not break loose, although on one ship all its mooring lines were severed except for the stern line. Conflicting inferences from this data were urged by the respective parties.

 It is generally recognized, and the District Judge did not overlook the fact, that hurricanes are erratic, and that it is possible to have sharp variations in velocity in small areas. An inference could perhaps have been drawn, as insisted by the defendant, that a gust following a lull at the defendant's pier accounted for the occurrence rather than the defendant's fault in mooring the ship. However, as the testimony admitted of alternative inconsistent inferences, the choice was for the fact finder. The District Court concluded:

"The court therefore finds that the weight of the credible evidence requires the conclusion that the Mann was not, under the circumstances, properly moored, and such faulty mooring permitted the breaking loose of the Mann, its collision with the piers of Maryland, and damage thereto in the amount of $86,000, for which judgment should be entered for Maryland. This conclusion follows regardless of whether the burden of proving lack of fault is cast upon Patapsco, or whether the general burden of proof remains upon Maryland."

Obviously this means that if the burden of proof were upon the libellant, the necessary finding of negligence is supplied to support the judgment of the Court.

 Even if we were to agree with the defendant's contention that the effect of the Judge's findings in its favor upon certain subsidiary facts is to impair the validity of his ultimate finding of negligence, the result reached by him would be the same under the rule laid down by Judge Parker in United States v. South Carolina State Highway Dept., 4 Cir., 1948, 171 F.2d 893, 896, which in our opinion is applicable here. Quoting from The Louisiana, 1866, 3 Wall. 164, 18 L. Ed. 85, he said:

"* * * the vessel must be held responsible for the damage resulting from the collision 'unless she can show affirmatively that the drifting was the result of inevitable accident or a vis major, which human skill and precaution and a proper display of nautical skill could not have prevented.' The Louisiana, 3 Wall. 164, 18 L.Ed. 85; The Newa, 4 Cir., 267 F. 115. The question is one of fact, i. e. whether the collision was the result of inevitable accident or was due to the negligence of those having the vessel in charge."

For this defendant to prevail it was not enough that the libellant may have failed to prove negligence; it was for the defendant to establish that it was free from negligence. It was required to prove affirmatively to the fact finder's satisfaction its contention that wind gusts substantially in excess of 70 miles per hour caused the accident rather than faulty mooring. We are unable to say that the District Court was "clearly erroneous" in holding that the defendant did not fulfill this requirement. Rule 52(a),

Federal Rules of Civil Procedure, 28 U.S.C.A., applicable in admiralty; Mc-Allister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20.

Doubtless this casts a heavy burden upon the offending ship, but the law deems this more consonant with justice than imposing upon the owner of an unoffending pier or stationary ship the not less difficult task of proving the negligence of the ship which caused the damage. This is not to say that there is liability without negligence, but that in this class of cases there is liability unless a presumption of negligence is satisfactorily rebutted.

Appellant puts strong reliance upon the case of Potomac Poultry Food Company v. M/V Anna Maersk, D.C.Md., 1934 A.M.C. 166, decided by Judge Chesnut. This also was a case of a ship tied to a wharf in Baltimore Harbor, which parted from its moorings during a storm, by the breaking of some of the bollards and cleats, and collided with another vessel. In that instance the Court was convinced by the evidence that there was no fault in the management of the ship. The rule of law laid down was precisely that which we apply here, namely, that "where damage is done by a ship breaking away from her moorings, the presumption is of negligence on her part," and there is liability "unless the libelled ship shows very clearly that she was absolutely without fault in the matter." The finding on the facts that the ship in that case had carried its burden and exculpated itself to the satisfaction of the trier of the facts does not preclude a contrary finding by the District Judge in the instant case. The Maersk decision does indeed support the defendant's contention that the owner of the runaway ship is not an absolute insurer, but it also recognizes that he must carry the ultimate burden of proof to attain exoneration.

In The Olympia, 6 Cir., 1894, 61 F. 120, the Court laid down the identical rule, but exonerated the vessel because, unlike the defendant in the present case, it established to the Court's satisfaction that every practicable precaution had been taken.

We find no error in the District Court's action. Accordingly, the judgment appealed from is

Affirmed.