## McALLISTER v. UNITED STATES.

No. 23.   Argued October 19, 1954.—Decided November 8, 1954.

*Jacob Rassner* argued the cause for petitioner.   With him on the brief was *Samuel Goldstein.*

*Ralph S. Spritzer* argued the cause for the United States.   With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Burger, Samuel D. Slade* and *Morton Hollander.*

Mr. Justice Minton delivered the opinion of the Court.

The petitioner brought suit against the United States under the Suits in Admiralty Act, 46 U. S. C. § 741 *et seq.,* to recover damages for negligence in creating conditions aboard ship whereby he contracted polio and for negligence in the treatment thereof.   The District Court, sitting without a jury, made findings of fact and stated its conclusions of law thereon (Admiralty Rules, No. 46½) in which it found the respondent not guilty of negligence in the treatment of the petitioner after he became ill, but found it guilty of negligence in permitting condi-

tions to exist on board ship which were conducive to the transmission of polio whereby the petitioner was unduly exposed and thereby contracted the disease. Judgment for damages was entered against respondent, and on appeal the Court of Appeals reversed on the ground that no proximate cause was shown between the negligence and the contraction of polio. 207 F. 2d 952. We granted certiorari. 347 U. S. 932.

The first question presented is whether the Court of Appeals in reviewing the District Court's findings applied proper standards. In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52 (a) of the Federal Rules of Civil Procedure. *Boston Ins. Co.* v. *Dehydrating Process Co.,* 204 F. 2d 441, 444 (C. A. 1st Cir.); *C. J. Dick Towing Co.* v. *The Leo,* 202 F. 2d 850, 854 (C. A. 5th Cir.); *Union Carbide & Carbon Corp.* v. *United States,* 200 F. 2d 908, 910 (C. A. 2d Cir.); *Koehler* v. *United States,* 187 F. 2d 933, 936 (C. A. 7th Cir.); *Walter G. Hougland, Inc.* v. *Muscovalley,* 184 F. 2d 530, 531 (C. A. 6th Cir.), cert. denied, 340 U. S. 935; *Petterson Lighterage & Towing Corp.* v. *New York Central R. Co.,* 126 F. 2d 992, 994–995 (C. A. 2d Cir.). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *United States* v. *Oregon Medical Society,* 343 U. S. 326, 339; *United States* v. *United States Gypsum Co.,* 333 U. S. 364, 395. We do not find that the Court of Appeals departed from this standard, although we do disagree with the result reached under the application of the standard. In relation to the District Court's findings we stand in review· in the same position as the Court of Appeals. The ques-

tion, therefore, is whether the findings of the District Court are clearly erroneous.

The petitioner was second assistant engineer on board the S. S. *Edward B. Haines* which was in Chinese waters from September 13, 1945, to December 3, 1945. During this time the master of the ship was informed that polio and other contagious diseases were prevalent in Shanghai, and a bulletin was posted on ship warning the crew thereof and directing them while ashore to exercise care in eating and drinking and to avoid association with the inhabitants ashore. So concerned was the master about this condition that he mustered the members of the crew on several occasions and warned them to the same effect. The District Court found that the petitioner obeyed these warnings, and there was no evidence in the record to the contrary. While the ship was in port at Shanghai, November 11, 1945, the record does not show that the petitioner went ashore. The last time he was ashore was November 1. On November 11, a number of Chinese stevedores came aboard to do some work, and there were also taken aboard at that time forty or fifty Chinese soldiers and fifty truck drivers and mechanics to be transported to Tsingtao. These soldiers, truck drivers and mechanics, fresh from Shanghai, the area infested by polio, were permitted wide use of the ship, including toilet facilities and the only drinking fountain, which was located on deck. To supplement the toilet facilities an open wooden trough was laid along the deck and discharged over the side of the ship. A hose was provided for flushing the trough, and on several occasions the petitioner had to go on deck to turn the water on to flush it. There was expert testimony by doctors that polio derives from a virus usually spread by people who are carriers of the disease to healthy persons who are susceptible. The virus is carried by human beings who have the organism in their intestinal tract or in their nose and throat. It enters

the respiratory or the intestinal tract of the susceptible person and is carried to the central nervous system where the disease produces injury.

The petitioner first reported his symptoms on November 24, 1945. The usual period of incubation for the virus causing polio is believed to be about two weeks, with a maximum of two and one-half weeks. There was expert testimony that the producing cause of polio in the petitioner was contact with the Chinese stevedores, soldiers, truck drivers and mechanics who came aboard the ship. According to the expert testimony, polio usually does not occur unless there have been previous cases of the disease or contact with persons who have it. The petitioner had an uneventful trip of months before reaching the Orient with individuals who had no polio; then suddenly he is thrown in contact with Chinese from the Shanghai area where polio is prevalent, and thereafter, within the normal period of incubation, he comes down with the disease.

On evidence showing these facts, including the opinion of the experts, we think there was substantial evidence from which the District Court could and did find that respondent was negligent in permitting these Chinese, from the infested area of Shanghai, to have the run of the ship and use of its facilities, and in furnishing the crude and exposed latrine provided on the deck of the ship, by reason whereof the petitioner contracted polio.

Of course no one can say with certainty that the Chinese were the carriers of the polio virus and that they communicated it to the petitioner. But upon balance of the probabilities it seems a reasonable inference for the District Court to make from the facts proved, supported as they were by the best judgment medical experts have upon the subject today, that petitioner was contaminated by the Chinese who came aboard the ship November 11, 1945, at Shanghai. Certainly we cannot say on review

that a judgment based upon such evidence is clearly erroneous. *Myers* v. *Reading Co.*, 331 U. S. 477, 485–486; *Tennant* v. *Peoria & P. U. R. Co.*, 321 U. S. 29. We think it was an allowable judgment of the District Court, and the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE REED would affirm on the grounds stated by the Court of Appeals.

MR. JUSTICE FRANKFURTER.

The petition on the basis of which a writ of certiorari was sought in this case presented two questions of law claimed to have general importance. The course of the argument at the bar left no doubt that these were not the questions which were involved in the decision of the Court of Appeals under review. Neither is the question which this Court is now deciding. Both counsel and this Court have viewed the case as no more than an ordinary action for negligence, giving rise, as is frequently the case, to conflict in evaluation of the evidence. In short, the Court of Appeals read the evidence one way and this Court another. If there is any class of cases which plainly falls outside the professed considerations by which this Court exercises its discretionary jurisdiction, it is cases involving only interpretation of facts bearing on the issue of causation or negligence. The standards of judgment in this type of litigation are well settled. The significance of facts becomes the bone of contention. And the facts stir differences that derive from the very elusiveness of the meaning of the myriad unique sets of circumstances in negligence cases. One's deep sympathy is of course aroused by a victim of the hazards of negligence litigation in situations like the one before us. But the remedy for an obsolete and uncivilized system of compensation for loss of life or limb of crews on ships and trains is

not intermittent disregard of the considerations which led Congress to entrust this Court with the discretion of certiorari jurisdiction. The remedy is an adequate and effective system of workmen's compensation.

The present case is one of those instances when a full appreciation before the writ was granted of what the argument developed should have led to a denial of the writ. If this Court is to entertain a negligence case solely because we stand in review in the same position as the Court of Appeals with relation to the District Court and disagree with the result which the Court of Appeals reached in the application of the right standards, the opportunity that is afforded in this case for a review of the Court of Appeals is an opportunity that should generally be afforded when the Court of Appeals reverses a District Court. (Incidentally, this Court is not reviewing the District Court. It reviews the Court of Appeals' review of the District Court.*)

Again and again and again has it been authoritatively announced that controversies such as this are not for this Court. Nor does it follow that because the case in fact was brought here and has been argued, the merits should be decided. The short answer is that to entertain this kind of a case inevitably will encourage petitions for certiorari in other like cases tendering an issue of more general importance which close examination proves wanting. Thus will again begin demands on the Court which it wisely cannot discharge and for which legislative relief had to come, or a feeling of discrimination will be engendered in taking some cases that ought not to be taken and rejecting others.

---

*See *Labor Board* v. *Pittsburgh S. S. Co.*, 340 U. S. 498, 503: "This is not the place to review a conflict of evidence nor to reverse a Court of Appeals because were we in its place we would find the record tilting one way rather than the other, though fair-minded judges could find it tilting either way."

These controlling considerations were thus put by Mr. Chief Justice Taft on behalf of the entire Court:

> "If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal. The present case certainly comes under neither head." *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387, 393.

With due regard to the Court's jurisdiction on writ of certiorari (Revised Rules of the Supreme Court, No. 19) and to the effective adjudication of those cases, inevitably abundant, for which the Court sits, the Court has again and again dismissed the writ as improvidently granted after a preliminary and necessarily tentative consideration of the petition. *United States* v. *Rimer,* 220 U. S. 547; *Furness, Withy & Co.* v. *Yang-Tsze Ins. Assn.,* 242 U. S. 430; *Tyrrell* v. *District of Columbia,* 243 U. S. 1; *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387; *Southern Power Co.* v. *North Carolina Pub. Serv. Co.,* 263 U. S. 508; *Keller* v. *Adams-Campbell Co.,* 264 U. S. 314; *Wisconsin Electric Co.* v. *Dumore Co.,* 282 U. S. 813; *Sanchez* v. *Borras,* 283 U. S. 798; *Franklin-American Trust Co.* v. *St. Louis Union Trust Co.,* 286 U. S. 533; *Moor* v. *Texas & N. O. R. Co.,* 297 U. S. 101; *Texas & New Orleans R. Co.* v. *Neill,* 302 U. S. 645; *Goodman* v. *United States,* 305 U. S. 578; *Goins* v. *United States,* 306 U. S. 622; *McCullough* v. *Kammerer Corp.,* 323 U. S. 327; *McCarthy* v. *Bruner,* 323 U. S. 673.

I would dismiss the writ as improvidently granted.