Preston Lee **TYNDALL**

v.

**CONDUIT AND FOUNDATION CORPO-RATION, Appellant.**

No. 12875.

United States Court of Appeals Third Circuit.

Argued June 9, 1959.

Decided Aug. 31, 1959.

J. B. H. Carter, Philadelphia, Pa. (Francis E. Shields, Pepper, Bodine, Frick, Scheetz & Hamilton, Philadelphia, Pa., on the brief), for appellant.

Abraham E. Freedman, Philadelphia, Pa. (Milton M. Borowsky, Marvin I. Barish, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

BIGGS, Chief Judge.

Tyndall brought an admiralty action *in personam* against his employer, The Conduit and Foundation Corporation, for maintenance and cure and for damages under the Jones Act, 46 U.S.C.A. § 688. The trial resulted in an award to Tyndall of $1,760 for maintenance and cure and damages in the amount of $47,500. Conduit has appealed.

The primary issue at bar turns on whether Tyndall was or was not a seaman. If he was a "seaman" at the time he was injured he was entitled to maintain actions for maintenance and cure and for damages under the Jones Act. The Jones Act contains no definition of the critical word.

Conduit is a Pennsylvania corporation engaged in a general contracting business, including the building of bridges across navigable streams, and in dredging operations. It owns a small fleet of vessels, including a suction dredge "Biff" and an L.C.P. "Harry Junior". Tyndall had been employed by Conduit for about five years and was the chief engineer on the "Biff" and was the registered master of the "Harry Junior".

Conduit purchased two old carfloats, 585 and 586, though it was not Conduit's intention to use them strictly for purposes of navigation. They were to be repaired and employed as pontoons or workboats in connection with the execution of Conduit's contracts. Carfloats 585 and 586 had been moored by Conduit at an old dock in the Delaware River near Tullytown, Pennsylvania. 585 had been fastened to the pier's down-river pilings and 586 had been tied to 585 on the latter's offshore side. Over a period of months both carfloats had become partially submerged. In August 1955 Conduit desired to prepare the carfloats for use and sent members of the crew of the dredge "Biff", Tyndall included, to pump them out in order to make them float. 585 was pumped out.

Between August 26 and August 30, 1955, a hurricane struck the area and washed 585 upon the river end of the pier so that it became suspended between the pilings and rested almost broadside to the channel. 586 remained in the water, still tied fast to and parallel to 585's offshore side. 586 still was partially filled with water but no structural damage had been done to her by the hurricane. The crew of the dredge "Biff" was dispatched to the scene and 586 was pumped dry. She was left tied still on the offshore side of 585, however. Tyndall was assigned the duty of reporting to 586 daily to pump her out, to caulk leaks, check lines, wash down the decks and perform similar duties. 586 was ready to be towed away but no effort had been made as yet to move her.

On the day of the accident, September 9, 1955, wind and a low tide threatened to wash 586 under the bow end of 585, and in this position 585 probably would have been submerged by the rising tide and damaged. Tyndall secured a number of planks and with a hammer and nails, which he had in his automobile, and some spikes, obtained from the carfloats themselves, he nailed several planks vertically to the offshore side of 585 to act as buffers to fend off 586. These planks did not extend sufficiently far down to the water to prevent the guardrail of 586 from getting underneath 585. Tyndall then endeavored to nail another timber up as a buffer. What happened next is described graphically in Tyndall's own testimony: "586 came in, and hit the board just as I started to nail it on, knocked it off my hand, knocked it out of my hand, struck my leg, throwed me off balance, and the leg landed between the two.", and "That is where the leg

got crushed and broke and broke the bottom of the board that was already [there] * * *."[1] He sustained serious injuries.

■ 586 was afloat on navigable waters. The work on which Tyndall was engaged was maritime in nature, a seaman's work. Tyndall was injured in the course of his employment. If there was any substantial doubt as to his "seaman" status that doubt must be deemed to have been set at rest by the *per curiam* opinion of the Supreme Court in Butler v. Whiteman, 1958, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754.

We have culled the facts of the cited case from the dissenting opinion of Mr. Justice Harlan, 356 U.S. 272, 78 S.Ct. 734, 2 L.Ed.2d 754, and from the opinion of the Court of Appeals for the Fifth Circuit, sub nom. Harris v. Whiteman, 5 Cir., 1957, 243 F.2d 563. The respondent was the owner of a wharf, a barge, and a tug, all situated on the Mississippi River. The barge was moored to the wharf. The tug was "dead" in the sense that it had been inoperable for months. It had no "crew" for over a year. At the time of the accident the tug was being rehabilitated, presumably in anticipation of a resumption of operations. It was lashed to a float which in turn was fastened to the wharf. The decedent had been a member of the tug's crew but while it was inoperable he had been employed as a laborer at odd jobs about respondent's wharf. On the morning of the accident he had been cleaning the tug's boiler. How the accident occurred was obscure. The decedent was last seen alive running across the barge to the tug, and the libellant claimed that decedent had fallen into the river between the barge and the tug. The decedent was drowned. It was alleged that respondent was negligent in failing to provide a gangplank for crossing between the tug and the float. The suit was based on the Jones Act. The District Court denied recovery. The Court of Appeals affirmed, citing Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205. It held that the decedent was not a "seaman" and therefore was not entitled to maintain a suit under the Jones Act.

The Supreme Court reversed, as we have said, stating that there was an "evidentiary basis for jury findings" as to whether or not the tug was in navigation, whether or not the decedent was a seaman and a member of the tug's crew, and finally whether the respondent's negligence played a part in producing the decedent's death. As to the first two issues the circumstances of the instant case seem more strongly in favor of Tyndall than those of the petitioner in Butler v. Whiteman. See the dissenting opinion of Mr. Justice Harlan. We consider the cited decision to be dispositive of the issues as to whether Tyndall was a seaman within the purview of the Jones Act. The court below as the finder of the facts resolved this point in favor of Tyndall and we can not set them aside even if we would. See McAllister v. United States, 1954, 348 U.S. 19, 75 S. Ct. 6, 99 L.Ed. 20, and Deitz v. United States, 3 Cir., 1955, 228 F.2d 494, 495.

■ The issue of Conduit's negligence remains for disposition. 585, after the hurricane, was left in a foreseeably dangerous position in relation to 586 and the pier. Conduit failed to supply Tyndall with buffers or anchors or any equipment to prevent 586 from being washed under 585. Conduit neglected its duty to supply Tyndall with proper equipment or tools to prevent the accident. That these deficiencies on the part of Conduit were the proximate cause of the accident and of Tyndall's injuries finds full support in the evidence. The findings of fact of the court below are clearly correct. The circumstances indicating negligence on the part of the shipowner are far stronger than those in Butler v. Whiteman, supra.

Other issues raised by Conduit need not be discussed.

The judgment will be affirmed.

1. Record p. 105.