Raymond MOORE, Appellant,

v.

RUTGER STREET SAND COMPANY, a Missouri Corporation, and Missouri-Illinois Material Company, a Missouri Corporation, Appellees.

No. 17716.

United States Court of Appeals Eighth Circuit.

Jan. 28, 1965.

Richard L. Hughes, St. Louis, Mo. (Mogab & Hughes, St. Louis, Mo., of counsel), for appellant.

John Shepherd and Paul V. Gilbert, of Evans & Dixon, St. Louis, Mo., for appellees.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiff-appellant, Raymond Moore, a resident of the State of Missouri, brought this action in admiralty against his employer, the Rutger Street Sand Company, a corporation, and Missouri-Illinois Material Company, also a corporation, seeking to recover maintenance and cure for injuries suffered by him in the course of his employment by the defendant Rutger Street Sand Company.

The District Court, in a trial without a jury, held against the plaintiff-appellant and made findings of fact and conclusions of law holding that:

"FINDINGS OF FACT

"1. On or about June 22, 1961, plaintiff was employed by defendant, Rutger Street Sand Company, a sand processing plant permanently secured to the west bank of the Mississippi River.

"2. Plaintiff's primary duty in this employment was that of a general laborer and his duties consisted generally of shoveling, cleaning, filling bins and other general labor about the Rutger Street plant.

"3. Plaintiff occasionally relieved the regular 'barge dropper' and when doing so would acquire duties of releasing a barge from its mooring so as to change its position in relation to a crane or sand shovel.

"4. Plaintiff's duties did not require him to, nor was he ordered to, board the vessel 'Gilmore' or any other vessel.

"5. Plaintiff's duties in connection with the sand barges while working as a 'barge dropper' were temporary and occurred only when the barges were docked at the Rutger Street plant.

"6. Plaintiff lived, slept and ate ashore and not on any vessel.

"7. Plaintiff received an hourly wage and overtime pay.

"8. Plaintiff's alleged accident did not occur while plaintiff was 'barge dropping' but rather while the plaintiff was performing the general labor duties connected with the operation of the sand processing plant.

"9. Plaintiff was subject to no maritime hazard at the time of his injury.

"CONCLUSIONS OF LAW

"1. The Court has jurisdiction of the parties and of this cause of action.

"2. Plaintiff was not a seaman nor a member of a crew of any vessel on or about the day of his alleged injury within the meaning of the General Maritime Law or the Statutory Law of the United States.

"3. Plaintiff is not entitled to recover from the defendant as a seaman or member of the crew and judgment should be entered in favor of the defendant.

"4. The defendant is entitled to recover its costs herein."

In appealing to this court, plaintiff attacks the trial court's finding that he was not a seaman or a member of a crew of any vessel on or about the time of his alleged injury within the meaning of the General Maritime Law or the Statutory Law of the United States and hence not entitled to recover from the defendants as a seaman or a member of the crew.

There is no question but that beginning May 8, 1961, the plaintiff was employed by the defendant Rutger Street Sand Company; that on or about June 22, 1961, while walking on a cat-walk located about 20 feet above the Mississippi River shoreline on the premises of the Rutger Street Sand Company, the plaintiff received some injury, the manner and extent of which are much in dispute.

It was originally thought by all parties that this was a workmen's compensation claim and on August 21, 1961, plaintiff made claim before the Industrial Commission of the State of Missouri for compensation. It was stipulated that he received compensation benefits in the amount of $1,440 and that medical payments had been made in his behalf in the amount of $889.42. In addition, a suit was pending in the state court of Missouri for an additional claim. Subsequently thereto plaintiff commenced the instant action.

In this appeal, the findings that plaintiff was employed primarily as a general laborer and only occasionally relieved the regular "barge dropper", that

his duties as a "barge dropper" were temporary and occurred only when the barges were docked at the Rutger Street plant, that the alleged accident and injuries did not occur while plaintiff was "barge dropping" but rather while plaintiff was performing the general labor duties connected with the operation of the sand processing plant, and the conclusions that plaintiff was not a seaman nor member of a crew of any vessel and was not entitled to recover from the defendant as a seaman or crew member are challenged as being clearly erroneous. A detailed consideration of the record is indicated.

Moore testified in his own behalf, generally to the effect that he was employed as a barge dropper and general laborer; that he spent about 75% of his time on barge work but that when not so working, he performed other labor duties on land; and that at the time of the alleged injury he "had been greasing the pulleys on the belt, overhead belt that carries the sand out to the yard". He claims support for his contention that he was a seaman through the testimony of one Curtis L. King, who was employed as a deckhand by the Missouri-Illinois Material Company, co-defendant, owner and operator of the tugboat "Gilmore", used to bring in barges loaded with sand and remove unloaded ones. After explaining his own work and that of a barge dropper, he stated he knew Raymond Moore from the time he started to work in May or June of 1961; that he did observe him working there as a barge dropper and worked with him. He testified:

"Q. Did you observe him during the course of your trip over to the Rutger plant doing all these things you have just enumerated, as a barge dropper?

"A. Yes, sir.

"Q. Have you seen him do that on a number of occasions when a barge is being brought in to replace another barge?

"A. He was always the one to come down there if he was the barge dropper."

Appellant also claims to be supported by the entries on time records kept at the Rutger Street Sand Company office. Appellant contended that such time cards indicated that he was a barge dropper and spent most of his time so doing. However, the cards were never introduced into evidence. They had been prepared by the appellant himself. There was testimony to the effect that the employees were annoyed at the necessity of keeping the time cards and that they were not kept correctly. Fred Lacey, a barge dropper, testified that to his knowledge they were not kept correctly and that lots of times he dropped barges and never wrote it down. Jess DeWeese testified that there were lots of times that Lacey dropped barges when he would not mark it on the time sheet. While appellant first insisted that his time slips were correct, he was confronted with his own time slip for the day of the accident which indicated that he was working in the tunnel rather than on the catwalk. He admitted that even though he was working on one project, he sometimes listed it under something else. At the close of the evidence, the appellant asked the trial court to consider the time cards, but apparently he acquiesced in the trial judge's view of the lack of evidentiary value of the cards.[1]

---

1. "The Court: Do you want to have them marked and put them in evidence?

"Mr. Mogab: Well, there's so many of them.

"The Court: The point is, I don't think that those time cards accurately reflect the time that was spent by—he may have spent more time than that on the barges, for all that is on there, and maybe less. All they want to be sure of is that there was eight hours reflected on those time cards.

"Mr. Mogab: All right.

"The Court: As Lacey said, they were all sore about those cards anyway."

As opposed to the testimony of the appellant, appellees introduced the witness Jess DeWeese, a crane operator for the Rutger Street Sand Company. As such, he would be working with the barge dropper. He stated that during the time Moore worked for Rutger Street, Moore was generally the laborer and worked in the yard and in the tunnel and not on the barges; further, that there were lots of times that Lacey, another employee, dropped the barges when he did not mark it on the time sheet. Lacey himself testified that in May and June of 1961 he was the only actual barge dropper at the Rutger Street operation; that his, Lacey's, job was that of barge dropper and Moore's job was that of a laborer in the yard. However, if there was some reason for him to go up to the tunnel, Moore would temporarily work with the barges; that lots of times he dropped barges and never wrote it down on the time sheet, and that the time cards were not kept correctly as the employees were "mad" that they had to keep these records.

In addition to the foregoing, the transcript indicates a great deal of testimony introduced before the trial court with reference to appellant's injury, motion pictures of him taken during the period of alleged inability to work which indicated the contrary, from all of which the trial court could well have considered appellant's credibility impeached.

■ Admiralty Rule 46½, 28 U.S.C.A., provides:

"Findings of fact and conclusions of law

"In deciding cases of admiralty and maritime jurisdiction the court of first instance shall find the facts specially and state separately its conclusions of law thereon; and its findings and conclusions shall be entered of record and, if an appeal is taken from the decree, shall be in-cluded by the clerk in the record which is certified to the appellate court under rule 49."

The language thereof is approximately the same as that used in Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., although this rule, as such, does not apply in admiralty cases [Rule 81(a), Fed.Rules Civ.Proc.]. However, the standards for testing the sufficiency of the findings under Admiralty Rule 46½ are generally the same as those which apply to Rule 52(a) of the Federal Rules of Civil Procedure.[2] "No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. (Citations omitted.)" McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24. In other words, the findings may be set aside only if they are "clearly erroneous". "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766.

From a review of the record herein insofar as it is applicable to a determination by the trial court that the appellant was not a seaman, we are convinced that the trial court's findings of fact are supported by substantial evidence; that they are not "clearly erroneous" and we are definitely not left with the idea or conviction that a mistake has been committed. The conclusions of law which the court applied to those facts are also correct. In view of this holding, we find no necessity for determining the additional questions presented with reference to appellant's alleged injury, disability, etc.

Affirmed.

---

**2.** U. S. Fire Insurance Co. v. Brocamp & Bressler, Inc., 6 Cir., 1961, 296 F.2d 81; West Tennessee Limestone Co. v. Federal Barge Lines, Inc., 6 Cir., 1961, 288 F.2d 663; Sisung v. Tiger Pass Shipyard Co., 5 Cir., 1962, 303 F.2d 318.