NEW YORK TRAP ROCK CORPORA-
TION, Plaintiff-Appellee
(Libellant),

v.

TUG DEVON, Tug Devon, Inc., Claimant-
Appellant,

Red Star Towing and Transportation
Company, Defendant-Appellant
(Respondent).

No. 278, Docket 30823.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1967.

Decided Jan. 18, 1967.

Edward C. Kalaidjian, New York City (Dwight B. Demeritt, Jr., and Thacher, Proffitt, Prizer, Crawley & Wood, New York City, on the brief), for appellee.

Christopher E. Heckman, New York City (John H. Hanrahan, and Foley & Martin, New York City, on the brief), for appellants.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Tug Devon, Inc., claimant of the tug Devon, and the Red Star Towing and Transportation Company appeal from an interlocutory decree of the United States District Court for the Southern District of New York, Dudley B. Bonsal, Judge, sitting in admiralty without a jury, which granted recovery to the New York Trap Rock Corporation for damages resulting from a towing accident. The court ordered the determination of the amount of damages referred to a Special Commissioner. On November 25, 1961,

the tug Devon was towing one of the New York Trap Rock Corporation's carfloats loaded with hopper cars filled with crushed stone up the East River in New York City. Somewhere between 14th and 21st Streets, at approximately 8:55 a. m., the cars broke free of their fastenings and rolled over the bow of the float into the river. The cars and stone were lost and the carfloat was damaged. The question for review is whether the trial court's findings of fact which led to its conclusion of law that the accident was caused by appellants' negligence are clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L. Ed. 20 (1954); Gruja v. United States Lines Company, 337 F.2d 375 (2d Cir. 1964).

■ The court concluded that the accident was caused by the tug's towing the carfloat, which was already down in the bow, too speedily with the result that water came over the bow, entered the forward compartments through the deck ventilators and, along with other water on the deck, depressed the bow so much that the cars ran forward on their tracks, in spite of their brakes and fastenings, into the river. There is substantial evidence to support this finding.

The Devon had towed the carfloat and some barges, the carfloat stern first, from libellant's quarry to Pier B, 60th Street, North River, where it dropped the barges. When the carfloat left Pier B at 60th Street, North River, it was 1½ feet down in the bow because of the placement of its load and had a bow freeboard of 20 inches. The float could be towed either end forward but the Devon elected to tow it bow forward and proceeded down the North River at full speed, somewhat in excess of 9 knots, against a flood tide. Mr. Finnegan, a dispatcher for the Moran Towing Company, testified that from his office on the twenty-fifth floor at 17 Battery Place he saw the tow proceeding south in the North River at approximately 8 a. m. travelling at approximately 8 to 9 miles per hour against the flood tide. Finnegan stated that thirty feet of the bow of the float was submerged under green water and that the level of water at the first hopper car was approximately thirteen inches. Finnegan was able to observe the Devon for five to seven minutes until it rounded the Battery and headed up the East River.

Mr. Ganly, who had supervised the work necessary to make the carfloat suitable to carry loaded hopper cars and therefore was familiar with the float, testified that water of that depth would flow down the open ventilators into the bow compartment and, as that filled, would enter the other compartments. However, this situation could have been arrested by stopping the vessel's forward progress and pumping the water from the compartments that had been flooded. If desired, a landing could have been made at the Battery. Ganly also refuted appellants' argument about the steel bulkhead blocking the water and the relevance of what direction the forward ventilator faced. There was evidence that the compartments were virtually dry when the tug embarked and that No. 1 compartment was flooded to within one foot of the deck, No. 2 to within two feet of the deck and Nos. 4, 5 and 6–24, 10 and 2 inches respectively when the tug docked after the accident. Except for a pinhole leak, the compartments were watertight.

The arguments presented by appellants are not persuasive. There was testimony by the Devon's Captain Olsen, an experienced tug captain who was towing a carfloat for the first time, that only swells came over the bow at the Battery and no water was shipped in the East River, but Judge Bonsal was entitled to discredit Olsen's statements especially in the light of a material erasure in the log book which the Captain would not admit had been made. That the cars on the port side started to roll before those on the starboard does not mean that the compartments were not full of water, but may have been due to differences in the fastenings or the brakes. Also, the court was entitled to accept Mr. Ganly's testimony that the float was seaworthy, even in regard to a deck eye which gave way releasing the port cars. Because Finne-

gan in his few minutes observation did not see the water level change does not mean that water was not flowing into the ventilators. Finally, appellant claims that the car brakes did not hold. There was some evidence that the hand brakes had been set. In any case, the evidence showed that the air brakes took effect automatically and could be expected to hold throughout the voyage. The court's conclusion that the brakes were set but could not withstand the tilt of the float is supported in the evidence.

The case turned primarily on the assessment of the credibility of witnesses who testified before the court in the trial. Credibility was for the trier. M. W. Zack Metal Company v. S.S. Birmingham City, 311 F.2d 334 (2d Cir. 1962); Broadcast Music, Inc. v. Havana Madrid Restaurant, 175 F.2d 77, 80 (2d Cir. 1949).

The interlocutory judgment holding the tug Devon at fault and granting recovery to libellant is affirmed.