**POTASH IMPORT AND CHEMICAL CO., Appellee,**

v.

**M/S KLAUS OLDENDORFF, her engines, boilers, etc., in rem, and Egon Oldendorff, in personam, Appellants.**

**No. 12814.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 7, 1969.

Decided March 4, 1969.

Rehearing Denied April 10, 1970.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief) for appellants.

Richard I. Gulick and Charles R. Dalton, Jr., Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief) for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

PER CURIAM:

Potash Import and Chemical Co., cargo owner, obtained a judgment in personam against Egon Oldendorff, the shipowner, and a judgment in rem against the vessel KLAUS OLDENDORFF for damages to a portion of a cargo of sulfate of potash in the vessel's No. 5 hold.[1]

The district court found on the evidence that the shipowner failed to use due diligence to make the vessel seaworthy before she commenced a voyage from Germany to the United States. The sole issue on appeal before this court is the correctness of the district court's finding. If "due diligence" was exercised the shipowner is not liable for resulting damage to the cargo since by clause 2 of the charter contract executed by the parties the owner was responsible for loss of or damage to the cargo "* * only in case the loss * * * [was] caused by improper or negligent stowage of the goods * * * or by personal want of due diligence on the part of the Owners or their manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their manager."

Prior to the voyage the vessel lay in dry dock at a German shipyard during which she underwent general maintenance work and a classification survey which takes place once every four years in order that she could obtain a seaworthy certificate issued by German Lloyd's. Among the various parts of the vessel inspected were the bilge pipes which run from the floor of the holds through the ballast or deep tanks to the bilges. The bilge pipes in each hold were subjected to testing, including a hammer test and a test under sustained hydraulic pressure. No leaks were discovered. After pressure testing the bilge pipes, the deep tanks through which the bilge pipes passed were "pressed," that is, the tanks were filled with water under pressure. It was testified that if there was a leak in the bilge pipe passing through the tank being "pressed" water would pass into the bilge pipe and through it into the vessel's hold.

During the movement of the vessel from the shipyard at Hamburg to her loading pier at Bremen the master again "pressed" the bottom tanks. Prior to the loading of cargo the vessel's master inspected the holds and found no evidence of water in the No. 5 hold.

The district court found that the owner had failed to exercise due diligence to make the vessel in all respects seaworthy. The bilge pipe in the area of the rupture was found to be excessively corroded and in a deteriorated condition. An egg-shaped hole approximately two and one-half inches by two inches in size was found in the offending bilge pipe and the metal around the edges of the hole was soft and crumbly. In addition it was shown that the ruptured pipe had been in use for a period beyond and in excess of its normal service life and that the rupture occurred in a low section

---

1. The damage to the cargo occurred as a result of a rupture in the bilge pipe. During the unloading operation it was necessary to lower the vessel in the water so as to permit dockside cranes to reach the cargo. When water was pumped into the vessel's lower ballast tanks water entered the No. 5 hold through the ruptured bilge pipe.

which was more susceptible to corrosion than other portions of the pipe; that there were no check or non-return valves at the bilge suctions in the holds to insure watertight integrity as against potential leaks from that portion of the bilge piping passing through saltwater-carrying deep tanks.

A rather close case is presented by the evidence. However, the district court's findings are not to be disturbed unless they are clearly erroneous. Rule 52(a) Fed.R.Civ.P. On the entire evidence in the instant case we are not left with the "definite and firm conviction that a mistake has been committed." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). We cannot say that the district court's finding of lack of due diligence is clearly erroneous.

Affirmed.