Oscar B. LADNER and Liberty Mutual Insurance Company, Plaintiffs-Appellants,

v.

BENDER WELDING AND MACHINE CO., Inc., et al., Defendants-Appellees.

J. C. McCAA, Jr., and Travelers Insurance Company, Plaintiffs-Appellants,

v.

BENDER WELDING AND MACHINE COMPANY, Inc., et al., Defendants-Appellees.

No. 71–1954

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1972.

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. *Citizens Casualty Company of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Norman Breland, Holleman & Necaise, Gulfport, Miss., for Ladner, Travelers & McCaa.

Charles R. Galloway, Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for Liberty Mut.

Alex Lankford, III, Mobile, Ala., Stanford Morse, Jr., Gulfport, Miss., and A. Clay Rankin, III, for defendants-appellees; Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

PER CURIAM:

The plaintiffs-appellants in each of these consolidated cases [1] are the owners and insurers respectively of a 50-foot wooden hull sports fishing vessel (the OFF KEY) and a 64-foot wooden hull twin diesel pleasure yacht (the MISS BEHAVE) lost or severely damaged during hurricane Camille when it struck the Mississippi Gulf Coast with unprecedentedly destructive force on Sunday evening, August 17, 1969. The defendants-appellees are the owners of the yacht EL TORO, a steel vessel 105 feet long by 24 feet in beam, with a draft of 8 feet.

During the day, Sunday, August 17, as it became known that Camille had shifted course westward and that the storm would strike the Mississippi Gulf Coast that night [2], the three vessels involved, along with some thirty or forty other craft, were moved from Gulfport Harbor by way of connecting waterways to Gulfport Lake, a more protected anchorage several miles inland from the coast. EL TORO arrived about six o'clock in the afternoon after both of the other vessels were anchored in the lake, and was anchored several hundred feet to windward of MISS BEHAVE and OFF KEY. During the storm OFF KEY, with a crew aboard, and MISS BEHAVE anchored and left unattended, were both driven onto the shore and suffered substantial damage. A captain and two crewmen remained aboard EL TORO, running her engines from time to time in order to keep her on a proper heading into the wind and to prevent her dragging anchor. EL TORO's rudders quit working during the movement into Gulfport Lake. Thereafter it was necessary to steer by running its engines.

The plaintiffs both claim that their vessels or their anchor lines were struck by EL TORO and that the defendants negligently failed to seek shelter sooner than was done and that the craft should have been anchored in a safer and better manner so as to avoid dragging its anchor and damaging the other two crafts. Contact with either vessel or its anchor lines was denied by the answer and by the testimony of the captain of EL TORO.

Making permissible credibility choices between sharply conflicting versions of what occurred, the trial court found that EL TORO exercised due and proper care, that while "[it] did in fact drag its anchor, [it] made no physical contact with either the OFF KEY, or the MISS BEHAVE; but it was shown by a preponderance of all of the evidence that as an inevitable and unavoidable result of an act of God, the plaintiffs * * * suffered damages which human skill and

1. Both for trial below and upon this appeal.

2. Actually the eye passed over Bay St. Louis, Mississippi, a few miles to the west of the location here involved, Gulfport Lake.

precaution, and a proper display of nautical experience could not have prevented. Such damage was not inflicted by the defendants." [3] Both complaints were held to be without merit and were dismissed with prejudice at the cost of the plaintiffs. The opinion of the trial court is reported as *Ladner and Liberty Mutual Insurance Company et al. v. Bender Welding and Machine Co., Inc. et al.*, D.C.S.D.Miss.1971, 336 F.Supp. 1264.

Careful review of the testimony in the 1160 page record before us fails to show that the findings and conclusions of the trial judge were "clearly erroneous". See *McAllister v. United States*, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Rule 52(a), F.R.Civ.P. To the contrary, they are amply supported by the record.

The judgments below are in all respects

Affirmed.

---

3. Citing and quoting from Petition of United States of America (Dammers & Van Der Heide Shipping & Trading (Antilles), Inc. v. Steamship Joseph Lykes et al.), 5 Cir. 1970, 425 F.2d 991, 995.