In the Matter of **MARINE LEASING SERVICES, INC.**, and **Pittsburgh Plate Glass Company**, Praying for Exoneration from or Limitation of Liability.

**UNITED STATES of America,**
**Appellant-Cross Appellee,**

v.

**PITTSBURGH PLATE GLASS COMPANY et al.**, Appellees-Cross Appellants.

No. 71-3352.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1973.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Anthony W. Gross, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for appellant.

Robert B. Acomb, Jr., George A. Frilot, III, J. Y. Gilmore, Jr., H. Barton Williams, Brunswick G. Deutsch, New Orleans, La., David F. Kaliner, Philadelphia, Pa., for appellees.

Before GEWIN, SIMPSON and RONEY, Circuit Judges.

PER CURIAM:

Among numerous barges, tugboats and other vessels lost or sunk in the Mississippi River between New Orleans and Baton Rouge, Louisiana, by the destructive force of Hurricane Betsy, September 10, 1965, was the Barge, MTC–602, loaded with 600 tons of liquid chlorine.

This appeal arises from extensive proceedings below which originated in a petition for exoneration from or limitation

of liability [1] filed by Marine Leasing Services, Inc. (Marine Leasing) as owner and by Pittsburgh Plate Glass Company (PPG) as bareboat charterer of the Barge MTC–602. Marine Leasing and PPG claimed the right to exoneration or limitation of liability for all claims arising as a result of the sinking of the MTC–602 near the east bank of the Mississippi River at about mile 227 in the vicinity of Baton Rouge.

The United States spent large sums first to locate and mark and then to raise the sunken barge and dispose of the dangerous liquid chlorine and the hulk. It sought recovery of these sums, statutory penalties and costs, in the limitation proceedings from the owner and charterer of the barge. Marine Leasing and PPG joined as a third party defendant, Cargo Carriers, Inc. (Cargo Carriers) operator of a fleet area where the MTC–602 was moored for wharfinger service and care at the time of the sinking. Indemnity against Cargo Carriers was sought in the event the United States was successful in its claim, based on allegations of negligence in attending the vessel as the proximate cause of the sinking.

Cargo Carriers denied liability for the sinking of the barge, and alternatively, in the event it should be held therefor, cross-claimed against Marine Leasing and PPG for the asserted failure to timely warn of the dangerous nature of the liquid chlorine cargo aboard the barge, and alleging that the MTC–602 was in an unseaworthy condition when delivered to Cargo Carriers for fleeting. Additionally, Cargo Carriers filed a third party complaint against Niagara Fire Insurance Company, American Motorist Insurance Company, Travelers Insurance Company and Employers' Liability Assurance Corp., Ltd. (herein collectively, Insurers) as insurers of Marine Leasing, PPG and the Barge MTC–602.[2] Finally, the Insurers cross-claimed against Cargo Carriers for contribution and/or indemnity for any liabilities assessed against them.

After the full sequence of pre-trial motions, depositions and hearings usual to hotly contested proceedings involving numerous parties and claims and cross-claims as to considerable sums of money, a trial of several days duration was held before the trial court as to the issues of liability.[3]

The trial court entered full findings of fact and conclusions of law followed by its judgment as to the issue of liability.[4]

■ The basic finding and conclusion below was that Hurricane Betsy was a *vis major*, an Act of God, and that it was the inevitable cause of the sinking of the barge, which human skill and precaution could not have prevented. Negligence as to mooring, tending or surveilling of the barge was found not to have been proved. Any violations of cited regulations on the part of Marine Leasing, PPG, Cargo Carriers or others were held not to have been a proximate cause of the sinking of the MTC–602. As to the "Pennsylvania rule" stated in Humble Oil & Refining Co. v. Tug Crochet, 5 Cir. 1970, 422 F.2d 602, 609, which establishes that a party who violates the Coast Guard regulations re-

1. Under Title 46, U.S.C., Sections 183–189, inclusive.

2. Certain other parties originally joined as third party defendants by Cargo Carriers were voluntarily dismissed prior to trial. These included generally the Messrs. Stapp, the owners, operators and master of the towboat, the C. H. DUNBAR, which delivered the barge to PPG's Lake Charles, Louisiana, Plant, the towboat itself in rem, and the insurers for these parties.

3. On the date the judgment as to liability was filed, the trial judge referred the issues of damages to the United States Magistrate for determination.

4. The opinion and judgment of the trial court are reported: In Matter of Marine Leasing Services, Inc., and Pittsburgh Plate Glass Company, praying for exoneration from or limitation of liability, E.D. La.1971, 328 F.Supp. 589.

quiring that an information card or "chemcard" be carried on the barge and readily available and that the barge be under "constant surveillance" has the burden of showing that such violation had no causal relation to the sinking of the barge, the lower court held that the defendants successfully carried that burden.

 The burden of proving that Hurricane Betsy was the inevitable cause or a *vis major,* which human skill and precaution could not have prevented, was placed upon the defendants, and the trial court found that the defendants carried that burden of proof. Even after concluding that there was no negligence associated with the sinking of the barge, the lower court recognized its duty to determine whether or not the United States may recover its removal expenses from an innocent party under Title 33, U.S.C., Section 409. It was held that since that section refers only to voluntarily or carelessly sunken vessels that the United States had no right to recover removal costs in what had been determined to be an innocent or non-negligent sinking. But since the statute casts a duty on the owner to mark a vessel even when it is "accidentally" sunk, the expenses of locating and marking the barge incurred by the government were allowed as recovery against Pittsburgh Plate Glass Company. Judgment was entered in favor of the Insurers and the suit was dismissed as to those parties.

Careful study of the record and of the extensive and well documented findings of fact and conclusions of law of the district court leave us unable to say, despite the strongly argued appeal and cross-appeal, that any of his findings of fact were "clearly erroneous"[5] or that error is demonstrated in the application of existing precedent to the facts found.

Both as to appeal of the United States and as to the cross-appeal of Pittsburgh Plate Glass Company the judgment is

Affirmed.

---

5. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.