**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION, a Virginia Corporation, Appellee,**

v.

**The M/Y LA BELLE SIMONE, her engines, tackle, apparel, boats, furniture, etc., in rem, and Channel Enterprises, Ltd., Appellants.**

**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION, a Virginia Corporation, Appellant,**

v.

**The M/Y LA BELLE SIMONE, her engines, tackle, apparel, boats, furniture, etc., in rem, and Channel Enterprises, Ltd., Appellees.**

Nos. 75–1492, 75–1493.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1975.

Decided June 2, 1976.

G. W. Birkhead, Braden Vandeventer, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant in No. 75–1493 and appellee in No. 75–1492.

Gordon W. Paulsen, New York City, William B. Eley, Norfolk, Va. (Haight, Gardner, Poor & Havens, New York City, Eley, Rutherford, Leafe & Quayle, Norfolk, Va., on brief), for appellees in No. 75–1493 and appellants in No. 75–1492.

Before WINTER and FIELD, Circuit Judges, and MERHIGE, District Judge.*

MERHIGE, District Judge:

Norfolk Shipbuilding & Drydock Corporation (Norfolk) contracted with Channel Enterprises, Ltd. (Channel) to perform repairs and make other additions on Channel's then new 236-foot luxury yacht La Belle Simone (SIMONE). The record reveals that Norfolk personnel performed services in connection with the contract on the vessel from about April 6, 1972 until June 30, 1972 when the vessel was taken to New York City for other unassociated work and outfitting. Thereafter, further payments on the outstanding balance of over $300,000 were delayed because of alleged overcharges and faulty workmanship. After trial on both liability and damages, the district court found that Norfolk had proved its invoice in the amount of $311,693.06, but that Channel was due a setoff of $80,527.07 because of the unworkmanlike services performed under teak forecastle. The district court also allowed interest on the judgment at the rate of twelve (12%) percent per annum from December 1, 1972 until final payment pursuant to the judgment is tendered. Channel noted an appeal and Norfolk thereafter noted a cross-appeal.

■ The standard of review in admiralty cases has been clearly prescribed by the Supreme Court:

"In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than the exercise under Rule 52(a) of the Federal Rules of Civil Procedure  .  .  . .

A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' "

*McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954), citing *United States v. Oregon Medical Society,* 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1951) and *United States v. United States Gypsum Company,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947).

■ Applying the review standard to this case, we conclude that the district court's rulings on the validity of the invoices, and on the setoff allowed Channel for the poorly constructed teak deck are not "clearly erroneous." The record reveals that Norfolk produced computer printouts containing billing totals, testimony of several workmen and supervisors who verified the printout totals, and a mass of payroll records, time cards, material slips and course sheets that substantially verified the printout totals although a group of the time cards were found to be missing. The evidence offered by Channel to rebut the correctness of the billing was speculative, and the district court correctly opted for the amounts contained in the Norfolk business records.

The record also contains testimony from several witnesses on the poor workmanship

---

* Sitting by Designation.

performed on the planking of the teak forecastle. The planks were not symetrically laid, the widths of the seams between the planks were not uniform and some seams were excessively wide. While Norfolk argues that the deck could have been routed to a uniform width of $^5/_{16}$ of an inch, the record was clear that such a width would have been unsatisfactory to Channel, and the agreement between the parties was understood as specifying that the deck be completed to the satisfaction of the owner. Finally, evidence was presented that indicated a complete stripping of the deck was necessary to correct the improper seam widths; in effect, the work hours and materials put into the deck by the Norfolk personnel were worthless. Accordingly, we concur in the district court's cancellation of that part of Norfolk's bill relating to the deck.

■ Norfolk argues, however, that it did not receive timely written notice of the alleged defective workmanship on the deck in accordance with a clause in its "Red Letter" and, thus, Channel is precluded from recovering for the faulty work. This contention is grounded in the language of one of the conditions contained in the letter addressed to the President of Channel from Norfolk which advised the yacht owner that all work performed on the yacht was "subject to the terms and conditions of our standard clause quoted on the enclosed letterhead."

> "In case of defective workmanship or material, our liability is limited strictly to the cost of repair, correction or replacement thereof, and only where such defects are reported to us in writing within thirty (30) days *after completion of the work.*" (Emphasis added.)

The district court found the contents of the letter to be a valid part of the agreement between the parties, based in large part upon the testimony of a Channel agent that

Channel had received and was satisfied with the terms and conditions prescribed in the letter. The trial court held that the clause did not affect the replacement of the teak deck, however, by reason of the fact that the work on the deck was never completed or accepted as a finished product. The record indicates that prior to the time that the SIMONE left Norfolk, Norfolk had been advised of the difficulties with the deck installation, and, through its agent, had agreed that the work was not progressing properly. Prior to the SIMONE sailing from New York, it was mutually agreed that the vessel would return to Norfolk to permit Norfolk Ship to finish the work. Channel apparently later abandoned any hope of having the work finished correctly by Norfolk personnel and took the vessel to an alternate shipyard. The evidence indicating that the work had not been completed is substantial, and the ruling below that the clause did not, therefore, apply to the complaint about the teak forecastle was not "clearly erroneous."

■ The remaining issue in the case deals with the correctness of the district court's award of pre-judgment interest on the modified invoice balance found due. Channel argues that an allowance of pre-judgment interest is not appropriate in this case because the amount owed to Norfolk was unliquidated and uncertain until the moment of judgment. In admiralty actions, however, pre-judgment interest is frequently allowed; the matter rests within the sound discretion of the trial court in its effort to award full and fair compensation. See *Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361, 366 (9th Cir. 1974); *Mid-American Transp. Co., Inc. v. Cargo Carriers, Inc.,* 480 F.2d 1071, 1074 (8th Cir. 1973); *Chagois v. Lykes Bros. S. S. Co.,* 432 F.2d 388, 395 (5th Cir. 1970), *vacated on other grounds,* 404 U.S. 1009, 92 S.Ct. 667, 30 L.Ed.2d 656 (1971).[1] We find no abuse

---

1. The amount due the appellee from the appellant was uncertain until the time of the District Court's judgment; the appellant refused to pay the contract price because of the appellee's failure to perform the work in accordance with the contract. The liquidated damage clause

contained in the "Red Letter" that limited liability for defective workmanship to the "cost of repair, correction or replacement", see text *supra,* was made inapplicable by virtue of the fact that the work on the vessel was not completed. *Id.* While the rate of interest was specified in

of that discretion in the allowance of interest in the instant case.

 The rate of interest allowed was the same as that stipulated in a clause contained in the "Red Letter":

"Please note that our terms of payment are net on receipt of invoice, 1% per month to be added to invoice if not paid within thirty (30) days."

The final invoice from Norfolk was dated August 3, 1972 and thirty (30) days thereafter would be September 2, 1972. However, the district court found that the parties had met in early July, 1972 and agreed to defer payment on the bill until the yacht owner had an opportunity to ocean test the vessel and otherwise inspect the work performed by Norfolk. No specific time was set, and the district court in "review of the record and consideration of all the facts and circumstances, including the nature and extent of the work performed" found that interest should run from December 1, 1972, apparently assuming that the debt matured on November 1, 1972.[2]

Norfolk argues that since the SIMONE actually arrived at the Dutch or alternate shipyard for repairs on the teak deck on September 5, 1972, and the repairs were virtually complete on November 1, 1972, the trial court clearly erred on setting the date from which interest commenced to run as December 1, 1972. We cannot agree with this contention, for the Dutch yard only reworked one portion of the work performed by Norfolk—the planking of the teak forecastle—and that part of Norfolk's bill was subsequently cancelled by the lower court. There is no evidence in this record that the inspection and testing of the work

finally billed to Channel had any relationship to the vessel's arrival at the Dutch yard. On the basis of the evidence before it, the trial court found that the payment on the remaining portion of the bill was deferred until the work could be properly inspected, and the date of November 1, 1972 was a reasonable construction of the parties' understanding on the question. Such a finding was not clearly erroneous and we must defer to that judgment.

AFFIRMED.

---

the contract on late payments, see text *infra*, the issue of whether any payment was proper was not clarified until judgment. Accordingly, the "due date" for payment, and thus for the commencement of any interest, cannot without resort to a legal fiction be considered to be fixed at the period for payment stipulated in the contract even though the appellee was found to be entitled to a partial payment. However, in admiralty cases dealing with unliquidated tort damages, pre-judgment interest has been allowed on the basis of the court's

desire to provide full and fair compensation to the damaged party. That policy applies with equal force to the instant case.

**2.** As noted in footnote 1, *supra*, the Court was not bound to accept the agreed interest rate stipulation in light of the fact that the damages were unliquidated. However, the Court, in the exercise of sound discretion, found the terms of the provision to provide a reasonable guideline for its award of pre-judgment interest, and hence applied it.