ARCHER DANIELS MIDLAND
COMPANY, Et Al.

v.

M/V FREEPORT, etc., In Rem, Sealink
Shipping Co., Ltd and Valiant Shipping
Co. (London), Ltd., Appellees/Cross–
Appellants,

v.

ST. CHARLES TOWING SERVICE, INC.;
Terand Marine Management, Inc.; and
Employers Insurance of Wausau, Et
Al., Appellants/Cross–Appellees.

No. 89–3228.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1990.

Charles E. Lugenbuhl, Stanley J. Cohn,
Lugenbuhl, Burke, Wheaton, Peck & Ran-
kin, New Orleans, La., for appel-
lants/cross-appellees.

Hugh Ramsay Straub, Terriberry, Car-
roll & Yancey, New Orleans, La., for appel-
lees/cross-appellants.

Before BROWN, JOLLY, and DAVIS,
Circuit Judges.

JOHN R. BROWN, Circuit Judge:

On December 12, 1987, at approximately
11:35 P.M., at Mile 117 AHP on the Missis-
sippi River, the upbound laden freighter
M/V FREEPORT collided with the down-
bound tow of the tug M/V VICKI LYNNE.
The FREEPORT subsequently came into
allision with a dock owned by Archer Dan-
iels Midland.[1]

The pilot of the FREEPORT and the
captain of the VICKI LYNNE had agreed
to a "port to port" passing. The FREE-
PORT would stay close to the east bank

---

1. Archer Daniels Midland is not involved with this appeal. The issue decided at the District Court and appealed here is who is actually re- sponsible for the damage caused by the collision and subsequent allision.

while the VICKI LYNNE would favor the west bank.

The FREEPORT had also made a passing agreement with another downbound tug, the M/V SCARLET GEM. They had agreed to a "starboard to starboard" passing. By the time of the accident, the SCARLET GEM had already joined a barge fleet which was moored on the east bank of the river. The pilot of the FREEPORT was unaware that the SCARLET GEM was no longer travelling down the river.

As the VICKI LYNNE and the FREEPORT approached one another, the pilot of the FREEPORT became concerned that there would not be enough room to pass on the "port to port" passage. He called VICKI LYNNE to request a "starboard to starboard" passage. The VICKI LYNNE agreed.

The maneuver failed, and the FREEPORT struck the tow being pushed by the VICKI LYNNE. The FREEPORT continued across the river until it. hit the docks and barge owned by Archer Daniels Midland on the west bank.

The District Court found that both the M/V FREEPORT and the M/V VICKI LYNNE were responsible for the collision and subsequent allision.[2] The Court apportioned the fault on a 50–50 basis between the two vessels.

The VICKI LYNNE raises five issues in their appeal. The FREEPORT also raises additional issues in a cross appeal. As the trial judge's findings of fact are above the Plimsoll Line of F.R.Civ.P. 52(a) which leads to the mutual fault decision, we affirm the court's rulings on all those issues without any detailed discussion with the exception of the issue of limitation of liability for the owners of the VICKI LYNNE. 705 F.Supp. 1197. This issue alone merits the publication of this opinion.

## LIMITATION OF LIABILITY

■ The trial judge was correct in not granting limitation of liability[3] to the owners of the VICKI LYNNE. However, limitation should have been denied only on the ground that the owners knew of the substandard tow lights. We reject the other violations specified by the District Court.

The fact that the VICKI LYNNE did not have a compass, charts of the river, or Rules of the Road—while not only showing that the owners were not overly concerned with good seamanship or seaworthiness—if causally related to the collision would have warranted a finding of privity and knowledge to justify a denial of limitation of liability. However, the absence of a compass, charts of the river, and Rules of the Road, had nothing to do with the actions of the VICKI LYNNE.

■ The captain of the VICKI LYNNE was scheduled to work for twenty-four hours. At the time of the collision, he had worked for eleven. Up to the time of the collision, there had been no violation of the statute.[4] Again, while this shows a disregard for safety, the number of hours worked was not excessive, even though

---

**2.** The District Court found several contributing factors. On the part of the VICKI LYNNE, the judge found fault in:

  i) The grossly inadequate lighting of the tug; ii) inadequate powering for the flotilla size and configuration in tow of VICKI LYNNE; iii) inadequate equipment to permit accurate vessel placement in the river; and iv) excessive working hours on the part of the tug's crew.

  On the part of FREEPORT, the judge found:

  i) the FREEPORT pilot's confusion over which downbound vessel was the VICKI LYNNE; and ii) the inadequate use of radar and lookouts which exacerbated the pilot's confusion.

**3.** "The liability of the owner of any vessel, whether American or foreign, ... for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.App. § 183(a) (1958).

**4.** "On a vessel to which section 8904 applies, an individual licensed to operate a towing vessel may not work for more than 12 hours in a consecutive 24–hour period except in an emergency." 46 U.S.C. § 8104(h) (1989).

they would have been in the normal run of things.

It was established by the District Court that the lights used by the VICKI LYNNE did not meet either Coast Guard or statutory specifications.[5] The VICKI LYNNE said that this was a technical violation at best and could not be a contributing cause to the collision.[6] The District Court found otherwise. In the dim light observed by the trial judge, we see no reason to disagree.[7]

Because the owners of the VICKI LYNNE supplied these lights, they had privity and knowledge of a deficiency the court found to be a contributing factor to the collision. On those grounds, limitation of liability was properly denied.

■ It is rehashing the obvious to say that a District Court's judgment in admiralty, as in all cases, will not be overturned unless the reviewing court finds that the lower court's findings were clearly erroneous. *McAllister v. U.S.*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24 (1954). The essential findings of fact are well within

the Plimsoll Line. There it ends, as does this opinion.

AFFIRMED.

---

5. In a test conducted in the courtroom, the judge found that the tow lights were so dim that they could not even be seen clearly in the unlit courtroom, much less than the two miles required by statute.

The undisputed fact that the pilot of the FREEPORT had to ask the VICKI LYNNE to shine a spotlight on it's tow supports the finding that the tow's lights were inadequate.

The statute requires: "In a vessel of more than 12 meters in length but less than 50 meters in length: a towing light, [visible at a range of] 2 miles." 33 U.S.C.A. § 2022(b).

6. In *The Pennsylvania* 86 U.S. (19 Wall) 125, 136, 22 L.Ed. 148 (1873), the Supreme Court said:

But when ... a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case, the burden rests upon the ship showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

The VICKI LYNNE did not show to the satisfaction of the trial judge that the substandard

lights were not the cause—much less could not have been the cause—of the collision.

7. The VICKI LYNNE seriously contests the district judge's finding that the tow lights were so dim that they were a contributing factor to the collision.

They point to the entry in the FREEPORT's log at 2328, six minutes prior to the collision, which says: "Towing barges observed in the middle of the river." If the barges were sighted six minutes before the collision, then the argument that the FREEPORT could not see the VICKI LYNNE because of inadequate barge lights would fail.

Ironically, this helpful argument is stranded by the FREEPORT's captain admitting in his deposition that he had put false entries into the log after the collision. He specifically said that the entry at 2328 was fabricated. (Karloukas Depo. pg. 56). This jibes with what the lookouts and the pilot said they saw.

All four men said in their depositions that they saw the tug two to three minutes prior to the collision; however, they also said that they didn't see the tow until seconds before impact. (Macabeles Depo. pg. 26, ln 21–pg. 27, ln 25; Gabierakis Depo. pg. 9, lns. 12–23; Gealon Depo. pg. 46, ln 19–pg. 47, ln 22; and Ponamsky Tr. Vol. 8, pg. 371).