446 F.2d 760
 Jeanne Maxine WEBB, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
No. 71-1258 Summary Calendar.*
*(1) Rule 18, 5 Cir.; See Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d
409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Aug. 9, 1971, Rehearing Denied Sept. 9, 1971.
 
 Owen G. Roberts, Jr., William C. Moore, W. Edward Swinson, Columbus, Ga., for plaintiff-appellant.
 William J. Schloth, U.S. Atty., D.L. Rampey, Jr., Asst. U.S. Atty., Macon, Ga., for defendant-appellee.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Billie Jean Webb, the seventeen year old daughter of a retired United States Army warrant officer, in a melodramatic attempt to bring about a reconciliation with the man from whom she had recently been divorced, swallowed fifty (50) Colchicine tablets between 3:00 P.M. and 3:30 P.M. on August 20, 1968. Colchicine is a poison sometimes prescribed for the control of inflammation due to gout (the tablets swallowed in this case had been prescribed for Miss Webb's father in order to control such inflammation) and the tablets were in a bottle plainly marked 'poison.' The approximately fifty (50) tablets were equivalent to about 30 milligrams. The drug is highly toxic and as little as seven milligrams has been known to be lethal.
 
 
 2
 No later than 6:30 P.M. on August 20, 1968, the mother of Miss Webb (the plaintiff-appellant in this action) became aware that Miss Webb had swallowed the tablets. It was not until 10:15 P.M. that evening, however, that Miss Webb was taken by her father to the Martin Army Hospital at Fort Benning, Georgia, for treatment. Upon her arrival at the hospital's emergency room, Miss Webb was seen by Dr. Otis S. Warr, a specialist in internal medicine, and by Mrs. Daisy Penny, a registered nurse. Dr. Warr was told by Miss Webb's father that the pills had been swallowed at about 8:30 P.M. Miss Webb, when first examined by Dr. Warr, did not seem to be in physical distress and did not appear to be nauseated. She refused to cooperate with Dr. Warr and Nurse Penny and declined to state the time when the pills were taken and the quantity involved. Miss Webb was given Ipecac, an emetic, and large amounts of water in an effort to induce vomiting. Several episodes of vomiting and mild diarrhea did occur during the two hours of emergency room observation which followed. After the emetic had served its purpose, Miss Webb was given an injection of Compazine, an anti-emetic, for the purpose of controlling the nausea which had been induced by the Ipecac. Dr. Warr decided not to admit Miss Webb to the hospital and he instructed Miss Webb's father to watch her through the night and to return her to the hospital without delay should more serious nausea and diarrhea develop. Miss Webb returned to her home with her father at about 12:30 A.M. on the morning of August 21, 1968.
 
 
 3
 It is not clear whether or not Miss Webb was physically distressed upon her return to her home on the morning of the twenty-first. The plaintiff testified at a pre-trial deposition proceeding that her daughter was very sick upon her return from the hospital, but at trial she stated that her daughter did not show signs of illness until about 10:00 A.M. on the twenty-first. In any event, Miss Webb was returned to the Martin Army Hospital at about 11:30 A.M. on the twenty-first in obvious distress (severe nausea and diarrhea). She was admitted to the hospital and for the next ten days she received intensive treatment at the Martin Army Hospital and at Walter Reed Army Hospital, Washington, D.C. Several complications developed, the major ones being vaginal bleeding, accumulation of blood in the peritoneal cavity, respiratory arrest, cardiac arrest, bone marrow depression, pneumonia, kidney failure and cerebral edema. She died on August 31, 1968, at Walter Reed Army Hospital, the basic cause of death being Colchicine poisoning and the immediate cause being pneumonia.
 
 
 4
 Alleging that her daughter's death was caused by the negligence of medical personnel at the Martin Army Hospital, Miss Webb's mother brought this suit against the United States under the Federal Tort Claims Act (Title 28, U.S.C., Chapter 171 and Section 1346(b)) to recover the value of the life of her late daughter. The plaintiff asserted that medical personnel at the Martin Army Hospital were negligent in the following respects in the treatment of her daughter:
 
 
 5
 1. Failure to use gastric lavage in the emergency room.
 
 
 6
 2. Failure to consult a poison control center in the emergency room treatment.
 
 
 7
 3. Failure to record vital body signs in connection with the emergency room treatment.
 
 
 8
 4. Failure to administer prophylactic antibiotics in the emergency room treatment.
 
 
 9
 5. Failure to do a blood count in the emergency room treatment.
 
 
 10
 6. Failure to administer prophylactic antibiotics immediately after admission to the hospital as an in-patient.
 
 
 11
 7. Failure to do a complete blood work-up on admission.
 
 
 12
 8. Failure to institute peritoneal dialysis at an early stage in treatment.
 
 
 13
 9. Failure to make a pregnancy test prior to performance of a laparotomy.
 
 
 14
 10. Performance of a laparotomy.
 
 
 15
 11. Failure to admit Miss Webb to the hospital upon her first appearance on the night of August 20, 1968.
 
 
 16
 The government denied all the allegations of negligence. After a lengthy trial without a jury, the district judge rejected all but the last allegation of negligence on the part of medical personnel at the Martin Army Hospital. The district judge found that Dr. Warr was negligent in failing to admit Miss Webb when he first saw her late in the evening of August 20, 1968. In rendering judgment for the United States, however, the trial judge found, as a matter of fact, that Dr. Warr's negligence was not a contributing proximate cause of the patient's death because the lapse of time between the ingestion of the Colchicine tablets and the seeking of medical attention enabled a sufficiently large quantity of the poison to be absorbed into Miss Webb's vital organs as to make it impossible to prevent her death. The district court found that even if Dr. Warr had admitted Miss Webb to the hospital on the evening of August 20, 1968, it was by that time too late to save her life.
 
 
 17
 We have carefully reviewed the voluminous record in this case and have concluded that the district court's findings are not 'clearly erroneous.' Rule 52(a), Federal Rules of Civil Procedure, McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. His findings each have substantial support in the evidence.
 
 The judgment of the district court is
 
 18
 Affirmed.
 
 
 19
 ---------------
 
 
 
 1 Judge Wisdom participated in the decision to place this case on the Summary Calendar and to affirm the judgment of the court below. He did not participate in the preparation or rendition of this opinion, Title 28, U.S.C., 46(d).